OPINION
This appeal is taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, James Warsing, appeals from the trial court's judgment awarding $129,899.68 to appellee, Rome Rock Association, Inc., for unpaid property dues and assessments.
Roaming Rock Shores is a private residential community built around the shores of Lake Roaming Rock in Rome and Morgan Townships in Ashtabula County. The subdivision was incorporated as the Village of Roaming Shores in 1979. Rome Rock Association, Inc. ("Rome Rock Association") is an Ohio nonprofit corporation that was formed in 1966 upon filing its articles of incorporation pursuant to R.C. 1702.01 et seq. According to the articles of incorporation, Rome Rock Association was formed for a variety of stated purposes, including the development, maintenance, and improvement of facilities and services associated with Roaming Rock Shores, the organization of a property owners' association, and the promotion of recreational activities and social intercourse among its members.
Rome Rock Association owns Lake Roaming Rock and a dam that controls the flow of water into that body. The corporation maintains and regulates the lake and various common areas used by members of the community. In addition, Rome Rock Association owns and operates assorted roads, parks, recreational facilities, and a maintenance building.
Rome Rock Association pays for these services out of its annual operating budget. The budget is funded through membership dues and operating assessments levied by the Board of Directors of Rome Rock Association. The membership dues are fixed at $60 per annum as established in the Amended Declaration of Covenants and Restrictions applicable to each lot situated in the Roaming Rock Shores subdivision.
Beyond the annual $60 membership dues, the Board of Directors levies additional assessments based on the anticipated operating expenses that Rome Rock Association will incur as approximated in its annual budget. Once the board adopts a budget at the beginning of a year, every property owner receives a bill reflecting his or her proportionate share of the operating costs of the community.
The by-laws of Rome Rock Association also provide for the creation of a property owners' association. Under the corporate by-laws, all record owners of lots and their spouses are eligible to become an "active member" of Rome Rock Association. Thus, an individual who owns a tract in the subdivision does not automatically become an active member of the association simply by virtue of owning property. Instead, such individual must apply for membership and be confirmed by the Board of Directors upon paying all dues and assessments associated with his or her lot.
The by-laws also provide for inactive membership. An "inactive member" is one whose membership rights and privileges have been revoked. A member can become inactive by being delinquent in the payment of dues and assessments or by committing some other type of rules infraction as determined by the Board of Directors. An inactive member is allowed ingress and egress to his or her property of record over the roads owned by Rome Rock Association, but such owner is not entitled to enjoy Lake Roaming Rock or the other recreational facilities located within the subdivision.
In August 1990, appellant began to acquire quit claim deeds to a number of lots in the Roaming Rock Shores subdivision. Appellant did so by paying a de minimis amount of money to a given property owner in exchange for executing an agreement by which he promised to indemnify the owner against all past, current, and future dues and assessments owed to Rome Rock Association. In some instances, the owner of the property actually paid appellant as much as $500 to accept title to the lot in return for appellant's assumption of financial liability for the property.
After acquiring these lots, appellant neither applied for membership in Rome Rock Association nor paid any of the back dues and assessments owed on the properties. In actuality, appellant had no intention of paying any of the fees associated with owning property in the Roaming Rock Shores subdivision. Rather, his purpose in obtaining the lots was to challenge the legality of the dues and assessments.
As a result of appellant's actions, Rome Rock Association filed a complaint in the trial court on September 28, 1990 seeking injunctive relief and monetary damages. The complaint requested that the trial court issue a preliminary injunction barring appellant from acquiring title to any more property in the Roaming Rock Shores subdivision until he had applied for membership in Rome Rock Association and been accepted by its Board of Directors. The corporation also sought to enjoin appellant permanently from any further transfers of property in the subdivision until he paid all past dues and assessments. Finally, the complaint asked for monetary damages to recoup the unpaid fees that appellant already owed to Rome Rock Association.
On October 22, 1990, the trial court held a hearing on the application for a preliminary injunction. Several witnesses testified, including appellant and the president of the Board of Directors of Rome Rock Association. During his testimony, appellant stated that he had acquired title to approximately eighty-five lots in the subdivision up to that point in time. Appellant conceded that he had seen a copy of the Amended Declaration of Covenants and Restrictions that applied to lots in the subdivision. Appellant, nevertheless, maintained that the dues and assessments charged by Rome Rock Association were unenforceable.
The trial court issued a preliminary injunction against appellant on November 2, 1990. Pursuant to the terms of the injunction, appellant was enjoined from acquiring any more titles to property in the subdivision until he applied for and was accepted into Rome Rock Association membership, thereby agreeing to abide by the corporation's by-laws. Further, the injunction also prohibited appellant from conveying any interest in real property located in the Roaming Rock Shores subdivision until he had paid all dues and assessments previously imposed by Rome Rock Association with respect to those lots that appellant owned.
In flagrant disregard of the preliminary injunction, appellant continued to acquire additional lots within the residential community. Appellant eventually obtained deeds to more than two hundred lots in the Roaming Rock Shores subdivision. Consequently, Rome Rock Association filed a motion requesting that appellant be required to show cause as to why he should not be held in contempt of court for violating the terms of the preliminary injunction. The trial court held a show cause hearing on October 30, 1991, and thereafter took the matter under advisement.
On December 16, 1992, the trial court finally ruled that appellant had violated the terms of the preliminary injunction that had previously been issued. Although essentially finding appellant to be in contempt, the trial court delayed rendering a decision with respect to what sanctions should be imposed. Thereafter, the trial court scheduled a hearing on the question of sanctions on March 12, 1993. Counsel for Rome Rock Association was present, while appellant attended and represented himself pro se.
On May 26, 1993, the trial court issued a judgment entry imposing sanctions against appellant for his contempt of court. In the judgment entry, the trial court found that appellant had acquired one hundred percent of the stock in two corporations who were the title owners of numerous lots located in the Roaming Rock Shores subdivision. With respect to these lots, the trial court ordered appellant to divest himself of any interest in or title to them.
In addition, the trial court found that appellant had violated the preliminary injunction by virtue of accepting deeds to various other lots subsequent to the issuance of the injunction which enjoined appellant from acquiring further property in the subdivision. As punishment for this contempt, the trial court set aside and canceled these deeds, thereby divesting appellant of any interest in the lots that he had acquired in his personal capacity.
Appellant filed a notice of appeal from the trial court's judgment entry imposing sanctions on him for contempt of court. On August 27, 1993, this court dismissed the appeal sua sponte for failure to prosecute.
Following the dismissal of the appeal, the record reflects that there was no further activity in this matter at the trial court level until March 1995. As of that date, there had been no disposition of Rome Rock Association's claims for permanent injunctive relief and monetary damages as set forth in its original complaint. Consequently, on March 15, 1995, the trial court scheduled a hearing on Rome Rock Association's request for a permanent injunction to be issued against appellant.
The hearing was held on April 27, 1995. Three witnesses testified, including appellant and the president of the Board of Directors of Rome Rock Association, and various exhibits were introduced into evidence. The trial court then permitted both parties to file briefs. On October 20, 1995, the trial court issued a judgment entry in which it found that Rome Rock Association was entitled to a permanent injunction by which appellant was enjoined from acquiring, selling, assigning, or conveying any interest in any real property located within the Roaming Rock Shores subdivision until all previously owed dues and assessments had been paid in full. The trial court, however, did not actually issue the order containing the permanent injunction until February 1, 1996.
Prior to the issuance of the permanent injunction, the trial court scheduled a hearing on the question of monetary damages for November 30, 1995. At this proceeding, Rome Rock Association called David B. McKee ("McKee") as its sole witness. McKee was a member of the Board of Directors and served as secretary of Rome Rock Association. Through McKee's testimony, Rome Rock Association identified forty-three exhibits for admission into evidence. These exhibits consisted of the restrictive covenants applicable to lots within the Roaming Rock Shores subdivision, the current by-laws of Rome Rock Association, and numerous minutes of meetings at which the corporation's Board of Directors amended the by-laws and established the budget for the coming fiscal year. Rome Rock Association also presented a numerical listing of every lot either previously or currently owned by appellant, including the amount he owed on each lot for past dues, assessments, and late charges.
Following the hearing on damages, no action was taken in the case for more than a year. Finally, in December 1996, counsel for appellant filed a request for findings of fact and conclusions of law with regard to the pending matter pursuant to Civ.R. 52. Again, nothing transpired in the trial court for a considerable length of time following the receipt of this request. Finally, in October 1997, the trial court ordered the parties to submit proposed findings of fact and conclusions of law.
Both parties filed their respective proposals on November 14, 1997. After taking the matter under advisement, the trial court issued a judgment entry on April 14, 1998. In this entry, the trial court set forth thirty-four findings of fact and ten conclusions of law. Ultimately, the trial court determined that Rome Rock Association was entitled to damages in the amount of $129,899.68 for unpaid dues and assessments on lots that appellant either previously or currently owned. The trial court entered a corresponding monetary judgment against appellant.
From this judgment, appellant filed a timely appeal with this court. He now asserts the following assignments of error:
 "[1.] The Trial Court erred to the prejudice of Defendant-Appellant by admitting the Affidavit of Agnes Conway at the April 27, 1995 Permanent Injunction Hearing, ultimately leading to the Court's April 14, 1998 ruling that the by-laws, submitted by Plaintiff-Appellee, as indicated in said affidavit, were the original by-laws of the Plaintiff-Appellee Corporation.
 "[2.] The Trial Court's April 14, 1998 ruling is contrary to the manifest weight of the evidence and violative of Ohio Revised Code Sec. 1701 and 1702."
 In his first assignment of error, appellant claims that the trial court erred by admitting a certain affidavit during the course of the April 27, 1995 hearing on the corporation's request for the issuance of a permanent injunction. The affidavit in question was sworn to by Agnes Conway ("Conway") before a notary public on December 29, 1994. In the affidavit, Conway averred that she became a member of Rome Rock Association in July 1967 upon acquiring title to a lot in the subdivision. After becoming a member, Conway was elected to the Board of Directors of Rome Rock Association in October 1971. She thereupon served as its secretary until May 1986.
Among her duties as secretary, Conway served as custodian of records for Rome Rock Association. The corporation submitted Conway's affidavit in an effort to help authenticate the original by-laws adopted by the Board of Directors. These by-laws were adopted at the very first meeting of the Board of Directors of Rome Rock Association on January 16, 1967.
At the permanent injunction hearing, Rome Rock Association attempted to introduce the Conway affidavit during the testimony of the president of the Board of Directors. Counsel for appellant objected on the basis that the affidavit constituted inadmissible hearsay which did not fall within any exception to the rule against hearsay. The trial court noted the objection, but did not immediately issue a ruling on it. Instead, the trial court allowed the witness to testify regarding the contents of the Conway affidavit, while reserving judgment on the affidavit's admissibility.
On appeal, Rome Rock Association contends that the document was never actually received into evidence, even though it was offered by its counsel. However, a review of the transcript of the April 27, 1995 hearing reveals otherwise. At the close of the proceeding, the trial court stated that Rome Rock Association's exhibits "1 through 6 [are] admitted, and I note the objection concerning the Conway affidavit." The trial court apparently admitted the affidavit during the proceeding, while reserving the right to disallow it later. There is nothing in the record to suggest, however, that the trial court subsequently exercised its authority to strike the affidavit at a later date. Indeed, the affidavit was filed in the record with the other admitted exhibits from the April 27, 1995 hearing. Thus, it would appear that the Conway affidavit was admitted into evidence.
Although the affidavit was admitted, we need not address whether it amounted to hearsay. Even assuming arguendo that it was hearsay, we fail to see how its admission into evidence amounted to reversible error. At most, it was harmless error. Civ.R. 61 provides:
 "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
 Appellant has failed to demonstrate how the admission of the Conway affidavit prejudiced his defense. Rome Rock Association submitted other evidence beyond this affidavit to corroborate the authenticity of the initial by-laws adopted by the original Board of Directors.
For example, one of the exhibits admitted into evidence during the November 30, 1995 hearing was a copy of the minutes from the first meeting of the Board of Directors of Rome Rock Association held on January 16, 1967. These minutes clearly demonstrate that the board adopted the by-laws as proposed:
 "A meeting of the Board of Trustees of Rome Rock Association, Inc. was held at the Clubhouse at Roaming Rock Shores on January 16, 1967.
"* * *
 "Proposed By-Laws for Rome Rock Association were presented for the consideration of the Board. A motion was made and it was voted unanimously to accept the By-Laws as presented."
 The board then immediately appointed two additional members to the Board of Directors pursuant to the powers that it had just conferred upon itself by adopting the proposed by-laws. The minutes were signed by both the chairman and secretary of the board.
In light of the other evidence supporting the authenticity of the initial by-laws adopted by the original Board of Directors, the admission of the Conway affidavit could not have been prejudicial to appellant. Upon review of the record, it is obvious that the affidavit was merely one item among the plethora of documents submitted by Rome Rock Association to substantiate its position that appellant was in violation of his duties as an owner of property in the Roaming Rock Shores subdivision. As such, even assuming for the sake of argument that the affidavit was hearsay, its admission amounted to no more than harmless error. Appellant's first assignment is without merit.
Under his second assignment of error, appellant maintains that the trial court's April 14, 1998 judgment was contrary to the manifest weight of the evidence and in violation of certain sections of R.C. Chapter 1702.[1] In order to analyze this proposed error, it is necessary to understand the position taken by appellant with respect to the dues and assessments levied by Rome Rock Association.
As stated earlier, membership dues for Rome Rock Association are $60 per year as set forth in the Amended Declaration of Covenants and Restrictions applicable to each lot in the Roaming Rock Shores subdivision. In this document, there is a passage with the caption "Membership Covenant." This covenant contains the following language:
 "The Purchaser agrees to abide by all the By-Laws of Rome Rock Association, Inc., and further agrees to pay Rome Rock Association an annual charge in the amount of $60.00, payable on the first day of May of the year following the date of this contract, and a like sum on the first day of May of each succeeding year, so long as he shall own property at Roaming Rock subdivision. * * * The above charge may not be increased except by vote of 2/3 of the association members. This covenant concerning said real estate and the enjoyment, use and benefit thereof shall be deemed to run with the land and non-payment of the annual charges shall be a lien thereon."
In addition to the membership dues, the Board of Directors levies assessments against each lot owner. These include a road assessment to pay for the upkeep of private roads within the subdivision, a security assessment used to fund a private security patrol for the community, a lake assessment utilized for erosion control and to maintain the quality of the water, and a general operating assessment to cover payroll costs for office personnel and groundskeepers. These assessments are levied by a vote of the Board of Directors and are authorized pursuant to the express language of Rome Rock Association's by-laws. As indicated previously, a lot owner can be designated as an inactive member of Rome Rock Association for failure to pay the assessments, thereby losing the right to enjoy Lake Roaming Rock and the other amenities in the subdivision.
On appeal, appellant does not dispute the right of Rome Rock Association to collect $60 annually in membership dues as established by the Membership Covenant in the Amended Declaration of Covenants and Restrictions. Despite repeatedly refusing to pay even this $60 annual fee, appellant now appears to concede that this condition of ownership is applicable to and binding upon each parcel of land in the Roaming Rock Shores subdivision because the Amended Declaration of Covenants and Restrictions has been properly recorded in the Ashtabula County Recorder's Office.
Appellant, however, continues to maintain that the Board of Directors has no authority to levy additional assessments for the upkeep and maintenance of the subdivision pursuant to the by-laws of Rome Rock Association. As stated previously, the board derives its authority to levy the assessments from these by-laws. Appellant argues that such assessments would necessarily have to be invalid if the current by-laws are found to be void.
In theory, the current by-laws trace their origins back to the initial regulations for the government of Rome Rock Association as adopted by the original Board of Directors at its meeting on January 16, 1967. The board has amended the by-laws on numerous occasions since their inception. Thus, the current by-laws are ostensibly an amended version of the original by-laws.
Appellant, however, claims that the present by-laws are a nullity. In this regard, the linchpin of his position is that Rome Rock Association was not able to authenticate the original by-laws adopted by the Board of Directors at its very first meeting on January 16, 1967.
It should be noted that appellant concedes that the minutes of this meeting undeniably demonstrate that the board adopted regulations for the governance of the corporation. Appellant suggests, though, that a true copy of the original by-laws does not exist and, therefore, their contents are not known. Given this alleged failure by Rome Rock Association to authenticate its original by-laws in the proceedings below, appellant posits that the by-laws purportedly in effect today must be deemed null and void.
Having presented his argument for striking down the current by-laws as a nullity, appellant then proceeds to assert that a majority vote of the membership of Rome Rock Association is required to enact corporate regulations. In support of this position, appellant cites R.C. 1702.10. This statute provides:
 "After the articles have been filed and at any time prior to a meeting of voting members, the incorporators or a majority of them, at a meeting, may adopt regulations for the government of the corporation, the conduct of its affairs, and the management of its property, consistent with law and the articles; may elect trustees in addition to those named in the articles; and may also elect members in addition to any named or provided for in the articles. If the incorporators fail to adopt regulations as herein authorized, regulations may be adopted at a meeting of voting members by the affirmative vote of a majority of the voting members." (Emphasis added.)
 In essence, appellant contends that the by-laws currently governing Rome Rock Association are null and void based on the corporation's failure to produce an authentic copy of the regulations adopted at the first meeting of the Board of Directors on January 16, 1967. Given the "missing" status of the original document, appellant contends that a vote of the membership of Rome Rock Association is required to enact regulations pursuant to R.C. 1702.10.
It is apparent that the trial court rejected appellant's challenge to the authenticity of the original by-laws. Indeed, the trial court admitted the copy of the original by-laws offered into evidence by Rome Rock Association during the November 30, 1995 hearing.[2]
As a result, appellant's argument with respect to alleged violations of R.C. Chapter 1702 is completely baseless. Specifically, there is no merit to appellant's contention that a vote of the membership of Rome Rock Association is still required to this very day in order to enact valid by-laws. In accordance with R.C. 1702.10, the incorporators of Rome Rock Association adopted "regulations for the government of the corporation, the conduct of its affairs, and the management of its property" at the January 16, 1967 board meeting.
Article VII of the original by-laws provided that they could be amended, added to, rescinded, or repealed by the Board of Directors. Since the inception of the by-laws, the Board of Directors has amended them on a number of occasions, but the by-laws have always continued to provide for their amendment by the board. Thus, the by-laws in effect today are simply an amended version of the original set of regulations.
Despite appellant's continuing recalcitrance when it comes to paying, the assessments about which he complains are expresslyauthorized by Rome Rock Association's by-laws. Moreover, the Membership Covenant as set forth in the Amended Declaration of Covenants and Restrictions specifically mandates that a purchaser of property in the Roaming Rock Shores subdivision must abide byall of the by-laws of Rome Rock Association.
Finally, the contents of the corporation's by-laws are governed by R.C. 1702.11. This statute provides in pertinent part:
 "(A) Without limiting the generality of such authority, the regulations, whether designated a constitution or rules, or by some other term [e.g., by-laws], may include provisions with respect to the following:
"* * *
 "(2) The qualifications, admission, voluntary withdrawal, censure, and suspension of members, and the termination of membership;
"(3) The fees and dues of members[.]"
 Hence, in promulgating the by-laws governing Rome Rock Association, the Board of Directors is expressly authorized by R.C. 1702.11(A) to establish the terms of membership. In addition, the board may set fees and dues of members.
It is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. See, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. This court must indulge every reasonable presumption in favor of the trial court's findings of fact and ultimate judgment. Gerijo,Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226.
In the case at bar, the trial court entered judgment in the amount of $129,899.68 for unpaid dues and assessments on lots either previously or currently owned by appellant. In rendering this monetary judgment, the trial court included thirty-four findings of fact and ten conclusions of law. Due to the number of factual and legal findings made by the trial court, this court is precluded from discussing them individually. Suffice it to say, however, we have reviewed the entire record and concluded that there was an abundance of evidence to support the trial court's ultimate judgment in favor of Rome Rock Association.
There was competent, credible evidence to support the judgment of the trial court. Despite appellant's assertion to the contrary, the evidence substantiated the claims of Rome Rock Association against him. The second assignment is not well-taken.
Finally, we note that Rome Rock Association has made a motion for attorney fees pursuant to App.R. 23. This rule provides:
 "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."
 Although App.R. 23 provides that reasonable expenses may be assessed against an appellant who brings a frivolous appeal, it does not define what constitutes such frivolity. Ohio courts, however, have construed a frivolous appeal as one which presents no reasonable question for review. See, e.g., Taylor v. Franklin Blvd. Nursing Home, Inc. (1996), 112 Ohio App.3d 27, 32; Talbott v. Fountas (1984), 16 Ohio App.3d 226. This court has likewise endorsed this interpretation of App.R. 23. See, e.g., Nozik v. Mentor Lagoons Yacht Club (1996), 112 Ohio App.3d 321, 326.
An argument could certainly be made that the present appeal is nothing more than a frivolous attempt on the part of appellant to avoid complying with the trial court's judgment. For years, appellant has been disputing the right of Rome Rock Association to collect annual dues and assessments from the residents of Roaming Rock Shores subdivision. This case was litigated for over seven years in the trial court prior to the filing of the appeal herein. During this time, appellant has steadfastly refused to pay the dues and assessments on the lots he has acquired within the subdivision, even though he was fully aware that Rome Rock Association levied such fees prior to his acquisition of such property.
Despite this, we will accord appellant the benefit of the doubt. The instant appeal was certainly of dubious merit, but appellant arguably raised a reasonable question for review by challenging whether the trial court's judgment was supported by the weight of the evidence. As such, Rome Rock Association's motion for attorney fees pursuant to App.R. 23 is hereby overruled.
Based on the foregoing analysis, the assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed.
NADER, J., O'NEILL, J., concur.
[1] In actuality, appellant's assigned error refers to violations of "Ohio Revised Code Sec. 1701 and 1702." Two observations are in order. First, 1701 and 1702 are chapters within the Revised Code, not sections. Second, appellant is only alleging violations of R.C. Chapter 1702, not R.C. Chapter 1701. The former chapter sets forth the applicable law governing Rome Rock Association because it is a nonprofit corporation.
[2] Appellant makes no argument on appeal that the copy of the original by-laws offered by Rome Rock Association did not comport with the rules of evidence. Thus, we need not address this issue.