DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment entered by the Washington County Common Pleas Court classifying Steven L. Morris, defendant below and appellant herein, a sexual predator pursuant to R.C.2950.09. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT IS A SEXUAL PREDATOR, AS DEFINED BY R.C. 2950."
SECOND ASSIGNMENT OF ERROR:
 "OHIO'S SEXUAL PREDATOR LAW, R.C. 2950, IS VOID FOR VAGUENESS, IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, WHERE THE LAW PROVIDES NO GUIDANCE AS TO HOW THE FACTORS SET FORTH IN R.C. 2950.09(B)(2) ARE TO BE WEIGHED."
THIRD ASSIGNMENT OF ERROR:
 "OHIO'S SEXUAL PREDATOR LAW VIOLATES SECTION I, ARTICLE I, OF THE OHIO CONSTITUTION, AS AN INVALID EXERCISE OF THE POLICE POWER, BEING UNDULY OPPRESSIVE UPON INDIVIDUALS."
FOURTH ASSIGNMENT OF ERROR:
 "OHIO'S SEXUAL PREDATOR LAW VIOLATES THE SEPARATION OF POWERS DOCTRINE IMPLICIT IN THE OHIO CONSTITUTION, IMPERMISSIBLY ENCROACHING ON A CORE JUDICIAL FUNCTION."
FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN IMPOSING COMMUNITY NOTIFICATION REQUIREMENTS IN THIS CASE, WHERE THOSE REQUIREMENTS WERE PREVIOUSLY FOUND TO BE UNCONSTITUTIONAL AS TO THIS APPELLANT, AND NO APPEAL WAS TAKEN FROM THAT DECISION."
The record reveals the following facts pertinent to this appeal. On June 16, 1990, at about 7:45 PM, Brenda Ware was walking southbound along State Route 7, underneath the I-77 overpass, when appellant drove up and asked her if she wanted a ride.[2] Ms. Ware accepted the offer, gave appellant her address and asked to be taken to her house. Once underway, however, appellant refused to take her home and instead drove to "various locations about the Reno and Newport areas" in Washington County. They stopped at one point for a "12-pack of beer" at a service station in Newport and then eventually headed toward Marietta. Appellant finally stopped the vehicle on Newport Township Road 19 and exited the car to "relieve himself." Upon returning, appellant went to the passenger door, opened it and instructed Ms. Ware to "kiss [his] dick." She refused. Appellant became irritated and warned her that "he had a knife in [the] glove box and . . . would kill her if she did not submit to his sexual wishes." He then forced her to perform fellatio on him while he pulled her hair and slapped her on the top of the head.
After awhile, appellant removed Ms. Ware from the vehicle and forced her to the ground. He cautioned that, "if she kept screaming he would get the knife and kill her." Appellant then instructed Ms. Ware to remove her pants and he then forced her to engage in vaginal intercourse. After a few minutes on the ground, they returned to the car and Ms. Ware was, again, forced to perform fellatio and engage in vaginal intercourse. While the assault was taking place, a motorist drove by, stopped and asked if they were having car trouble. Ms. Ware then yelled for help exclaiming that she was being raped. A couple of other motorists stopped to help as well, at which point appellant disengaged from the intercourse. One of the motorists escorted Ms. Ware away from appellant while another went to a neighboring home and called the Washington County Sheriff's office. Several of the men attempted to detain appellant until authorities could arrive, but he broke free and drove off.[3] Appellant was arrested later that same evening by State Highway Patrol officers on 1-77 heading toward West Virginia. Appellant initially refused to speak about the incident, but later claimed that Ms. Ware cried "rape" because he refused to pay her the $50 which she had requested in order to have sex with him.
On July 10, 1990, the Washington County Grand Jury returned an indictment charging appellant with three (3) counts of rape in violation of R.C. 2907.02. Appellant pled not guilty to these charges, but later reached a "deal" with prosecutors whereby he would plead guilty to the first count of the indictment in exchange for a dismissal of the other two (2) counts. On September 27, 1990, appellant changed his plea to guilty on count one. After the trial court reviewed appellant's rights, and after a brief recitation of the facts and circumstances surrounding this case, the court accepted the plea and found him guilty. The court ordered that the remaining counts be dismissed. The trial court entered judgment to that effect on October 15, 1990, and the matter was passed for pre-sentence investigation. The trial court held a sentencing hearing several months later and heard arguments from both sides and reviewed the pre-sentence investigation report.[4] On December 17, 1990, the trial court sentenced appellant, inter alia, to an indefinite term of eight (8) to twenty-five (25) years imprisonment with the first eight (8) years to be served as "actual incarceration." No appeal was ever taken therefrom.
Nevertheless, appellant made various legal challenges once he was incarcerated. Appellant filed numerous materials with the trial court over the years including motions for shock probation in 1991 and 1996 (both of which were denied) and a petition for post-conviction relief which was dismissed.[5] To his credit, however, appellant also strove to improve himself while in prison attending Alcoholics Anonymous (AA) meetings, completing three (3) phases of the "Polaris" sexual offender program as well as completing the course requirements for an Associate's Degree from Ohio University.
In 1997 the Ohio Department of Rehabilitation and Corrections sent a letter to the trial court recommending, pursuant to R.C. 2950.09(C)(1), that appellant be classified as a "sexual predator." The trial court scheduled a hearing to consider the matter and appointed counsel to represent him during the course of the classification proceeding. On April 18, 1997, appellant filed several different motions seeking to have the provisions of R.C. 2950.09(C) declared unconstitutional. The arguments appellant adduced asserted that the statute (1) was void for vagueness, (2) amounted to an impermissible ex post facto law and (3) violated his rights under both the United States and Ohio Constitutions to be free from "double jeopardy." The State filed several memoranda in opposition and the court took the matter under advisement.
The trial court rendered a decision on August 11, 1997, and rejected most of appellant's arguments. The trial court concluded that R.C. 2950.09(C) was not void for vagueness and did not violate either State or Federal Constitutional prohibitions against "double jeopardy." Likewise, the court found no constitutional infirmity with the registration requirements of R.C. Chapter 2950 holding that registration did not constitute a punishment and that retroactive application of the statute is not an impermissible ex post facto law. The court reached a different conclusion, however, with respect to the community notification provisions. Citing the detrimental effect that such notification could have on a convicted sex offender, the court concluded that this procedure was in fact a punishment which could not be applied retroactively pursuant to Section 9, ArticleI, United States Constitution and Section 28, Article II, Ohio Constitution. The trial court thus sustained appellant's motion to this limited extent, but overruled the motion in all other respects.
Having resolved these constitutional challenges, the parties entered into an agreement to defer the actual resolution of appellant's sexual offender status until "a time approximately six months prior to [his] projected release date, or parole eligibility date, whichever is earlier."
The matter came on for hearing on August 27, 1999, at which time the State rested on the basis of the evidence adduced at trial and previously included in the record. Appellant testified on his own behalf relating his educational accomplishments, as well as the treatment he received, during the roughly nine (9) years that he had been in prison. The parties also stipulated to the introduction of a report prepared by J. Michael Harding, Ph.D., concerning "Sex Offender Psychological Evaluation and Clinical Risk Assessment." Dr. Harding's report stated that he met with appellant and administered several tests regarded as "actuarial measures of sex offense recidivism risk."[6]
Appellant's scores on those tests, the witness opined, "suggest[s] that his risk for sex offense recidivism would be lower than for half of the sex offenders that recidivate." Dr. Harding also indicated, however, that the risk of sexual "reoffending" would increase if he resumed his abuse of alcohol after leaving prison.
On September 7, 1999 the trial court adopted the recommendation that appellant be classified a "sexual predator." The court noted that prior to appellant's conviction and prison sentence in this case, appellant had a "lengthy criminal history" including numerous "OMVI" offenses. Considerable attention was also devoted to Dr. Harding's findings and conclusions. The court was particularly concerned with Dr. Harding's belief that appellant would be at greater risk of engaging in one or more sexually oriented offenses in the future should he resume consuming alcohol. Given that appellant had not "demonstrate[d] an ability to live as a free person in society without abusing alcohol," the court essentially concluded that the public was better protected by classifying him as a sexual predator. Thus, the court ordered that appellant be informed of "all the registration and reporting requirements that w[ould] be imposed upon him" and that he would "be subjected to neighborhood and community notification upon his release from incarceration."[7]
Judgment to that effect was entered on October 20, 1999, and this appeal followed.
 I
We shall jointly consider appellant's second, third and fourth assignments of error as they all raise constitutional challenges to the sex offender classification scheme set forth in R.C. chapter 2950.[8] First, appellant argues that the lower court erred in ruling that these provisions are not void for vagueness. We disagree. The Ohio Supreme Court has recently considered, and rejected, this very argument. See State v.Williams (2000), 88 Ohio St.3d 513, 532-533, ___ N.E.2d ___.[9]
Second, appellant argues that these provisions are an invalid exercise of the State's police power and violate "the separation of powers doctrine implicit in the Ohio Constitution . . ." We summarily reject these arguments, however, because it does not appear that they were asserted in either of appellant's 1997 motions to dismiss the classification proceedings. It is axiomatic that a failure to raise at the trial court level the issue of the constitutionality of a statute generally amounts to a waiver of such issue and therefore it need not be heard for the first time on appeal. See State v. Green (1993), 66 Ohio St.3d 141,152, 609 N.E.2d 1253, 1262; State v. Cook (1992), 65 Ohio St.3d 516,529-530, 605 N.E.2d 70, 84; State v. Smith (1991),61 Ohio St.3d 284, 293, 574 N.E.2d 510, 519; State v. Awan (1986),22 Ohio St.3d 120, 489 N.E.2d 277, at the syllabus. For these reasons, the second, third and fourth assignments of error are all overruled.
 II
We next turn our attention to the fifth assignment of error which is directed at the trial court's imposition of "community notification requirements." Appellant points out that the trial court held that those requirements were unconstitutional in its 1997 ruling on his two (2) motions to dismiss the sexual offender classification proceedings. Appellant concedes that the court's decision was essentially overruled by the Ohio Supreme Court inState v. Cook (1998), 83 Ohio St.3d 404, 423, 700 N.E.2d 570,585, which found that R.C. Chapter 2950 was not violative of constitutional prohibitions against retroactive/ex post facto laws. Nevertheless, appellant argues that the trial court's 1997 ruling was never appealed by the State and, therefore, remained "the law of this case" which should have been applied to him after his 1999 hearing. We are not persuaded.
The "law of the case" doctrine holds that the decision of areviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. See Hubbard ex rel.Creed v. Sauline (1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781;Hawley v. Ritley (1988), 35 Ohio St.3d 157, 160, 519 N.E.2d 390,393; Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3-4, 462 N.E.2d 410,412-413. The doctrine functions to compel trial courts to follow the mandates of reviewing courts. See State v. Stanley (1997),121 Ohio App.3d 673, 682, 700 N.E.2d 881, 886; State v. Wallace
(1997), 121 Ohio App.3d 494, 499, 700 N.E.2d 367, 370; also seeNeilsen v. Meeker (Jun. 19, 1997), Cuyahoga App. No. 71885, unreported; Perez v. Cleveland (Dec. 31, 1995), Hamilton App. No. C-940553, unreported. In the cause sub judice, no appellate review of the trial court's 1997 ruling occurred. The law of the case doctrine therefore does not apply in this situation. Seee.g. Ratcliff v. Adkins (Sep. 9, 1992), Lawrence App. No. 91CA30, unreported; Brewer Brewer Sons v. International Union ofOperating Engrs., Local No. 18 (Dec. 21, 1990), Ross App. No. 1603, unreported. For these reasons, the fifth assignment of error is overruled.
 III
We now return to the first assignment of error wherein appellant argues that the trial court erred in adjudicating him a "sexual predator." Our analysis begins with R.C. 2950.01(E) which defines a "sexual predator," inter alia, as one who has been convicted of a "sexually oriented offense" and is likely to engage in one or more sexually oriented offenses in the future. A "sexually oriented offense" includes any one of a number of listed offenses including rape. See R.C. 2950.01(D)(1). If a person was convicted of a sexually oriented offense prior to January 1, 1997, and if that person is still serving a term of imprisonment on, or after, that date, the Ohio Department of Rehabilitation and Correction shall determine whether to recommend that such offender be adjudicated a sexual predator.See R.C. 2950.09(C)(1); also see Section 3, Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2668. If the agency so determines, it shall send that recommendation to the court that sentenced the offender. R.C. 2950.09(C)(1). The court is not bound by that recommendation and may deny the recommendation and determine that the offender is not a sexual predator without a hearing. Id. at (C)(2). However, the court may also hold a hearing to determine whether the classification is warranted. Id.
If a sexual predator classification hearing is held, the offender and the prosecutor are both afforded the opportunity to present evidence relevant to the question of whether the offender should be classified a sexual predator. Id. at (B)(1). In making that determination, the trial court judge is required to consider all relevant factors including, but not limited to, the following:
"(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
(c) The age of the victim . . .
 (d) Whether the sexually oriented offense . . . involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense . . . displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct." Id. at (B)(2).
We note that the Ohio Supreme Court in Cook, supra at 426,700 N.E.2d at 588, held that the trial court's sexual predator determination was "not against the manifest weight of the evidence." This has been construed by other appellate districts to mean that a civil "manifest weight of the evidence" standard is to be applied in reviewing determinations of sexual offender status. See e.g. State v. Hinkle (May 19, 2000), Perry App. No. 99CA19, unreported; State v. Hart (Mar. 24, 2000), Hamilton App. No. C-990541, unreported.[10] To that end, we note that a judgment will not be reversed as being against the manifest weight of the evidence so long as it is supported by some competent and credible evidence. See Gerijo, Inc. v. Fairfield
(1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536; Vogel vWells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159; C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992. With that in mind, we turn our attention to the trial court's 1999 adjudication classifying appellant as a sexual predator.
In the case sub judice, appellant's history of alcohol abuse constituted the primary factor behind the trial court's decision. That history is well documented both in Dr. Harding's report as well as the 1990 pre-sentence investigation report.[11] A dependence on drugs or alcohol is certainly a legitimate factor to consider under R.C. 2950.09(B)(2). See State v. Thatcher
(Apr. 18, 2000), Auglaize App. No. 2-99-50, unreported; State v.Grimes (Feb. 15, 2000), Franklin App. No. 99AP-610, unreported;State v. Michaels (Dec. 8, 1999), Summit App. No. 18862, unreported. This was particularly true here. Although Dr. Harding opined that appellant's "risk for sex offense recidivism would be lower than for half of the sex offenders that recidivate," Dr. Harding also stated that appellant's "risk to society will be significant if he begins abusing alcohol once he is released." (Emphasis added.) The trial court correctly noted that although appellant has attended AA meetings while in prison, he has not "demonstrate[d] an ability to live as a free person in society without abusing alcohol."
We further note that the record is also replete with evidence of other factors which support the trial court's decision. It is, for example, uncontroverted that appellant has an extensive criminal background (albeit no previous convictions for sexually oriented offenses) and that he threatened Ms. Ware with death in order to force her submission to the rape. It also appears from the record that appellant slapped his victim about the head while he forced her to perform fellatio.
The State is not required to demonstrate every factor in R.C. 2950.09(B)(2) before an offender can be classified as a sexual predator. State v. White (Feb. 9, 2000), Summit App. No. 19387, unreported; State v. Nelson (Dec. 23, 1999), Cuyahoga App. No. 73031, unreported; State v. Smith (Jun. 2, 1999), Summit App. No. 18622, unreported. A court may so classify an offender even if only one or two factors are present so long as the totality of the relevant circumstances show, by clear and convincing evidence, that the offender is likely to commit a sexually oriented offense in the future. State v. Foster (May 19, 2000), Washington App. No. 99CA4, unreported; State v. Clutter (Jan. 28, 2000), Washington App. No. 99CA19, unreported; State v. Mollohan
(Aug. 19, 1999), Washington App. No. 98CA13, unreported. It is also worth noting that the Ohio General Assembly's intent in enacting the sexual offender classification scheme was "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). That being said, and considering the record as a whole, we conclude that sufficient competent and credible evidence existed to support the trial court's decision to classify appellant as a sexual predator. The first assignment of error is therefore overruled.
Having reviewed all errors assigned and argued in the briefs, and finding merit in none of them, the judgment of the trial court is hereby affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KLINE, P.J. EVANS, J.: Concur in Judgment Opinion
[2] Ms. Ware had experienced "car trouble" that evening after work and, with no other means of transportation available, had started walking home.
[3] In his haste to escape, appellant almost ran over one of the motorists and struck a vehicle.
[4] The Adult Parole Authority opined in its report that appellant was "a very assaultive and dangerous individual" from whom "the community deserve[d] protection . . ."
[5] This court affirmed that dismissal in State v. Morris
(Mar. 1, 1995), Washington App. No. 94CA7, unreported.
[6] Those tests were the "Minnesota Sex Offender Screening Tool-Revised (MnSORT-R) and the Rapid Risk Assessment For Sex Offense Recidivism (RRASOR)[.]"
[7] The court made no attempt to reconcile its imposition of the community notification requirements with its previous 1997 decision that such requirements, imposed retroactively, were constitutionally violative ex post facto laws.
[8] The current version of R.C. Chapter 2950 was enacted in 1996 as Ohio's version of the so-called "Megan's Law." See
Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2601; also seeState v. Cook (1998), 83 Ohio St.3d 404, 405-406, 700 N.E.2d 570,573-574.
[9] Obviously, the Supreme Court did not release Williams
until long after the briefs were filed in this case. Therefore, neither counsel nor the trial court had the benefit of the Supreme Court's pronouncement on the issue during the proceedings below.
[10] This Court essentially reached the same conclusion inState v. Daugherty (Nov. 12, 1999), Washington App. No. 99CA09, unreported, and State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13, unreported, wherein we generally held that a trial court's determination of sexual predator status will not be reversed if it is supported by some competent credible evidence. Admittedly, on occasion, that standard has been stated somewhat differently as requiring a reviewing court to determine if the trier of fact had sufficient evidence before it to satisfy the "clear and convincing" burden of proof imposed by R.C.2950.09(B)(3). See e.g. State v. Meade (Apr. 30, 1999), Scioto App. No. 98CA2566, unreported; State v. Dunn (Jun. 17, 1998) Pickaway App. No. 97CA26, unreported. This is entirely consistent with the civil manifest weight standard, however, as "burden of proof" and "standard of review" are entirely distinct concepts. Matters which must be proven by "clear and convincing" evidence are still subject to review under a manifest weight standard. See e.g. State v. Schiebel (1990), 55 Ohio St.3d 71,74-75, 564 N.E.2d 54, 60-61.
[11] Appellant reportedly admitted to the probation officer who prepared the pre-sentence investigation report that he was an "alcoholic," had "started drinking at age 14 or 15 and . . . [that such drinking had] contributed to all his legal problems."