OPINION
This is an appeal from the Trumbull County Court of Common Pleas. Appellants, Shawn M. Datchuk ("Shawn"), Robert Datchuk ("Robert"), and Ling Datchuk ("Ling"), appeal the trial court judgment entry dated March 23, 1999, which awarded $3,800 to Shawn and $2,000 to Robert pursuant to a jury verdict.[1]
On September 1, 1995, Shawn was a passenger in a vehicle operated by his mother, Ling, which was struck from the rear by an auto. Appellee, David C. Pollard, was operating the vehicle that struck Ling and Shawn. The accident occurred in Trumbull County, Ohio. On February 13, 1997, appellants filed a complaint against appellee and Midwestern Indemnity Company.[2] A jury trial was held on March 22, 1999.
The evidence at the trial revealed that Ling was picking up her son, Shawn, and his friend from a high school football game when she was struck from behind by appellee's vehicle. Shawn testified that there "was minimal damage [to his mother's car and] * * *" and it was driven home that night. According to Ling's testimony at trial, she asked her son if he wanted to go to the emergency room, but he told her he just wanted to go home. Shawn stated that he hit his left knee on the dashboard. After the pain in his knee progressed for about a week, his parents, Ling and Robert, took him to their family physician, Dr. Lee, who eventually referred him to Dr. Rah, an orthopedic surgeon. After several visits to Dr. Rah, and an MRI, Dr. Rah performed an exploratory arthroscopy of Shawn's knee in December 1995. Thereafter, Dr. Rah retired and Shawn continued his treatment with Dr. Hsu. The evidence at trial revealed that Shawn was active prior to the accident. However, after the collision, he could not ride his bike, help his father out around the house with chores, or play baseball or football with his younger brother.
Robert Datchuk took the stand and related that when his wife and Shawn returned home on the evening of the collision, he recalled that Shawn was complaining of pain in his knee. Robert explained that he asked Shawn if he wanted to go the emergency room, but Shawn said no, so he did not force the issue. Robert thought that Shawn would get better in a couple of days because he was raised to believe that "you get bumps and bruises, things happen, they usually heal themselves with time." As the days went on, Shawn's pain did not diminish, so Robert took him to Dr. Lee, who then referred them to Dr. Rah.
After Dr. Rah performed Shawn's surgery, Robert thought that it would take time for Shawn to heal, but then one day Shawn complained that both of his knees were hurting, so they went to see Dr. Hsu, who ordered another MRI and suggested that Shawn receive physical therapy. Shawn underwent therapy with Dr. Kim from September 1996 through December 1996. Robert testified as to the expenses he incurred as a result of Shawn's medical treatment.[3]
Dr. Hsu's videotape deposition was presented to the jury. In his deposition testimony, Dr. Hsu stated that he first examined Shawn on September 12, 1996, after Shawn complained of pain in both of his knees. Dr. Hsu, to some degree relied on the reports of Dr. Rah, which revealed that Shawn had a sprained left knee and a torn meniscus. On cross-examination, Dr. Hsu stated that before Dr. Rah did the surgery on the left knee, he did an MRI, which suggested "a tear of the posterior horn of the medial meniscus." However, when Dr. Rah actually did the surgery, "there was no tear found of the medial meniscus of the left knee." He also indicated that the October 9, 1995 MRI report revealed that there was a "finding of advanced mucoid degeneration of the meniscus." He explained that it was unusual for this kind of degeneration of the meniscus to form so soon after the accident.
Furthermore, when Dr. Hsu examined Shawn, he had a "limp a little bit on both leg[s]. [His] [k]nees [were] swollen and tender * * *." Dr. Hsu prescribed medication, did a MRI, and sent him for physical therapy. The MRI of the left knee, which was taken on September 27, 1997, showed a "small amount [of] water in the knee." Dr. Hsu testified that the "physical examination and the treatment recommended by [him] for physical therapy and the medication [was] necessary and related to the accident [Shawn] had on [September 1, 1995]." Dr. Hsu was unable to render an opinion as to whether the surgery performed by Dr. Rah was necessary. Dr. Hsu mentioned that there was nothing in Shawn's treatment records to suggest that Shawn's right knee was injured in the collision. He explained that Shawn's tendonitis in the right knee could have "come from sports activity or some kind of old injury or kind of systematic disease and that caused the knee problem."
Appellee testified in his own behalf. He admitted that he ran into the rear of the Datchuk automobile. He further stated that there was no structural damage to his car. Photographs of both vehicles were introduced into evidence to show the damage each one sustained.
At the conclusion of the trial, the jury returned a general verdict in favor of appellants. The jury awarded damages in the amount of $3,800 to Shawn and $2,000 to Robert. Appellants filed the instant appeal and now assert the following assignment of error:
 "The trial court erred, in that the jury awarded inadequate damages since it failed to consider elements of [a]ppellant's [sic] damages established by uncontroverted expert testimony, thus rendering a verdict that was against the manifest weight of the evidence."
Appellants' sole contention is that the jury verdict was against the manifest weight of the evidence. In assessing a claim that a judgment in a civil matter is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. See, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The Supreme Court of Ohio in Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, stated that "[w]e must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. * * * In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. * * *." (Citations omitted.)
Moreover, the trier of fact, in this case the jury, is primarily responsible for judging the credibility of the witnesses and of the weight to be given their testimony. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In their brief, appellants rely on Baum v. Augenstein (1983),10 Ohio App.3d 106. In Baum, the jury disregarded uncontroverted expert testimony, which established that the plaintiff's medical care would cost in excess of $20,000, and awarded only $1,100. The Franklin County Court of Appeals held, "* * * [a] new trial is warranted on the ground of inadequacy of damages where it appears that the jury failed to consider some elements of damages. * * *."Id. at 108; see, also, Slivka v. C.W. Transport, Inc. (1988),49 Ohio App.3d 79, 80; Miller v. Irvin (1988), 49 Ohio App.3d 96, 98.
In the present case, appellants presented the expert testimony of Shawn's treating physician, Dr. Hsu, who first treated him in September 1996, one year after the injuries occurred. Dr. Hsu testified that Shawn's injuries were related to the accident of September 1, 1995, and that his medical treatment was necessary. Dr. Hsu did not give an opinion as to whether Shawn's arthroscopic surgery was needed as a result of the automobile accident. Dr. Hsu explained that the finding of advanced mucoid degeneration of the meniscus was unusual so soon after the accident. It was undisputed that Shawn sustained medical bills of over $11,687. However, Shawn testified that his mother's vehicle sustained minimal damage. Appellee also warranted that there was no structural damage to his car.
In Reder v. Antenucci (1989), 62 Ohio App.3d 139, the defendant admitted negligence, and the only question for the jury to consider was whether the defendant's negligence proximately caused injury to the plaintiff. Only one verdict form was given to the jury, however, and they were instructed to write "none" in the blank provided for compensation if the defendant's actions did not cause the injury. The jury returned a verdict of none, leading plaintiff to file a motion for new trial. The trial court denied plaintiff's motion, and the case was appealed to this court.
In Reder, in affirming the trial court's judgment, we stated that by marking the verdict form "none," the jury found that either there was no injury or that no injury was caused by the defendant's actions. Id. at 146. There was expert evidence presented that there were many possible causes for the medical signs and symptoms of which the plaintiff complained. There was an alternative explanation for the source of the plaintiff's physical problems. In addition, neither of the plaintiff's expert medical witnesses was the original treating physician. There was also testimony to show that the plaintiff's auto was not even damaged in the collision that supposedly caused his injuries. This court concluded that "the jury had some grounds to believe that the impact of the crash may not have been severe enough to cause the claimed injury to [plaintiff]." Id. at 144.
In the case sub judice, the jury only submitted a general verdict as to each plaintiff. No other interrogatories were requested or submitted concerning proximate cause. Thus, Shawn's and Robert's general verdicts can only be interpreted to conclude that the jury's determination of the proximate cause issues was reflected in the damages awarded. The expert medical testimony left leeway for the jury to believe the alternative theory that some of Shawn's injuries were preexisting. Hence, the extent of damage due solely to the accident was at issue. This court has determined that an expert opinion, including an opinion offered by a medical expert in a personal injury case, such as this one, is simply an item of evidence intended to aid the jury in reaching the correct result in consideration with the other evidence of the case, and that the expert's opinion is not necessarily conclusive upon the jury. Reder, 62 Ohio App.3d at 143; see, also, Mackey v.McCormick (Aug. 29, 1997), Trumbull App. No. 96-T-5517, unreported, at 3, 1997 WL 531243.
It is our view that the lack of damage to the parties' automobiles, as well as the possible alternative causes of Shawn's alleged injuries, provided the jury with competent, credible evidence from which to conclude that the September 1, 1995 accident was not the direct and proximate cause of the total extent of Shawn's injuries. Indulging every reasonable presumption in favor of the trial court's judgment in this case, we cannot conclude that the jury's verdict was against the manifest weight of the evidence.
For the foregoing reasons, appellant's sole assignment of error is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.
 ________________________________ DONALD R. FORD, PRESIDING JUDGE
CHRISTLEY, J., O'NEILL, J., concur.
[1] Apparently, appellants orally moved to dismiss Ling Datchuk from the matter during the trial, and the trial court granted the motion.
[2] On March 15, 1999, appellants amended their complaint and Midwestern Indemnity Company was not included as a party to this action. Therefore, for purposes of this opinion, there is only one appellee, David C. Pollard.
[3] The expenses incurred were as follows:
 a. Dr. Lee $ 180.00 b. Trumbull Radiologists $ 97.00 c. Dr. Rah $ 2,655.00 d. 2 MRI's (10/09/95 10/02/97) $ 2,500.00 e. Trumbull Memorial Hospital $ 2,708.69 f. Pathology and Anesthesia $ 519.00 g. Dr. Hsu $ 333.00 h. Dr. Kim $ 2,695.00 _____________ TOTAL $ 11,687.69