OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.  The
advance sheets to Ohio St.3d will also contain the volume and
page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Gerijo, Inc., Appellee, v. City of Fairfield, Appellant.
[Cite as Gerijo, Inc. v. Fairfield (1994),      Ohio St.3d
.]
Municipal corporations -- Zoning -- Elements party who attacks
     municipal zoning ordinance on constitutional grounds must
     prove.
A party who attacks a municipal zoning ordinance on constitutional
     grounds must prove, beyond fair debate, both that the
     enactment deprives him or her of an economically viable use
     and that it fails to advance a legitimate governmental
     interest.
     (No. 93-1434 -- Submitted April 26, 1994 -- Decided
September 14, 1994.)
     Certified by the Court of Appeals for Butler County, No.
CA92-07-116.
     Plaintiff-appellee Gerijo, Inc. ("Gerijo") is an Ohio
corporation owned by members of the Oliver family.  The Olivers,
either individually or through the corporation, have owned the
property at issue in this appeal since the 1870s.  The subject
property consists of approximately thirty-seven acres situated
one thousand feet southwest of State Route 4 in Fairfield, Ohio.
     In 1979, defendant-appellant city of Fairfield adopted a
comprehensive land use plan ("the 1979 Plan") in response to the
rapid population growth the city had experienced during the
preceding two decades.  The city devoted one section of the 1979
Plan to the perceived need for land use management as a means to
foster relationships among the residential, commercial and
industrial segments of the city.  One objective articulated in
the land use section was to create a housing mix of seventy
percent owner-occupied and thirty percent renter-occupied
dwellings.  In 1986, the Fairfield City Council passed a
resolution retaining this ratio but specifying that the
owner-occupied units must be single-family homes.  Thereafter in
1989, Fairfield adopted a revised land use plan ("the 1989 Plan")
in which it again stated the city's desire for a seventy-thirty
ratio between single-family and multifamily dwellings.  The 1989
Plan also included an intent to confine all industrial
development to the areas east of State Route 4.

Throughout most of the last century, the Olivers and/or Gerijo farmed the land at issue in this case. Approximately ten years ago, however, the property ceased to be used as a farm and has since remained vacant. In its current state, the Gerijo property is an undeveloped area surrounded on three sides by multifamily residential developments. The fourth side, lying to the north and northwest of the subject property, is zoned for commercial uses. While the subject parcel was once zoned as a multifamily residential area, the city of Fairfield rezoned the area in 1989 as M-1, an Industrial Park District. According to Chapter 1169 of the Fairfield Planning and Zoning Codes ("the zoning code"), M-1 is a light industrial district reserved for particular uses including warehouse storage, trucking terminals, laboratories, product manufacturers, and public utilities. Those uses are further limited by certain conditions and prohibitions outlined in the zoning code.1 In the 1989 Plan, the city defined "light industrial" areas as those "located in the most visible industrial portion of the city. The purpose here is to attract less environmentally disruptive development that typically includes high growth and high tech type industries. [T]his type [of] development is the key to the City's economic and tax base.***"

In recent years, the Oliver family had received several offers from prospective buyers who were interested in developing the subject property. Most of the solicitations proposed multifamily developments similar to those located on surrounding properties and included offers ranging from $30,000 to $70,000 per acre. Gerijo also received one offer for $40,000 per acre to develop the property under the existing light industrial zoning classification.

On April 24, 1989, Gerijo filed a petition with the Fairfield City Council requesting that the subject property be rezoned from M-1 light industrial to R-3 multifamily residential. Gerijo sought the reclassification so that it could pursue an offer extended by Trammell Crow Residential Corporation to develop five hundred thirty-two multifamily units on the subject property at a price of $65,000 per acre. At the time Gerijo filed its petition, Fairfield housing reflected a fifty-fifty ratio of single-family to multifamily units. Approval of the rezoning and subsequent development of the five hundred thirty-two units would have altered the housing ratio to roughly forty-eight to fifty-two in favor of multifamily units. On August 14, 1989, the Fairfield City Council rejected Gerijo's application.

Once the city denied its request to rezone the property, Gerijo filed a complaint with the Court of Common Pleas of Butler County challenging the constitutionality of the M-1 zoning scheme as it related to the subject parcel. Gerijo argued the M-1 zoning prevented "the highest and best use of the Property, and it is arbitrary, confiscatory, unreasonable, and not based on the public health, safety, moral[s] and general welfare." While finding that Gerijo failed to prove the M-1 zoning was confiscatory, the trial court ultimately invalidated the classification on the grounds that it failed to substantially advance a legitimate governmental interest. The court of appeals affirmed.

The appellate court, finding its judgment to be in conflict

with the judgment of the Court of Appeals for Lake County in Diversified Constr., Inc. v. Willoughby Hills (Dec. 4, 1992), Lake App. No. 91-L-145, unreported, certified the record of the cause to this court for review and final determination.

Graydon, Head & Ritchey, Anthony G. Covatta and Harry J. Finke IV, for appellee.

Manley, Burke, Fischer & Lipton, Timothy M. Burke and Gary E. Powell; Millikin & Fitton and John H. Clemmons, City Law Director, for appellant.

Alice Robie Resnick, J.  In Columbia Oldsmobile, Inc. v. Montgomery (1990), 56 Ohio St.3d 60, 564 N.E.2d 455, this court held that in order to invalidate a zoning ordinance on constitutional grounds, the party attacking the regulation must establish, beyond fair debate, that the zoning classification denies him or her an economically viable use of the zoned property without substantially advancing a legitimate interest in the health, safety or welfare of the community.  The question certified for our review is whether the two elements of this test must be proven in the conjunctive or the disjunctive.  For the reasons which follow, we find that a plaintiff must prove both prongs in order to invalidate a zoning ordinance.  The decision of the court of appeals is therefore reversed.

The authority vested in municipalities to enact zoning ordinances is clearly defined in this state.  R.C. 713.06 permits Ohio cities such as Fairfield to "frame and adopt a plan for dividing the municipal corporation or any portion thereof into zones or districts, representing the recommendations of the [municipality's planning] commission, in the interest of the public health, safety, convenience, comfort, prosperity, or general welfare ***."  In addition, the Ohio Constitution explicitly subjects the right of an individual to use and enjoy his or her property to the legitimate exercise of local police power.  See Section 3, Article XVIII.  Inasmuch as the exercise of police power interferes with individual rights, the use of such power must bear a substantial relationship to a legitimate government interest and must not be unreasonable or arbitrary. Hudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852; Cincinnati v. Correll (1943), 141 Ohio St. 535, 539, 26 O.O. 116, 118, 49 N.E.2d 412, 414.  We acknowledge, however, that the line separating the legitimate use of police power from the illegitimate is often incapable of precise delimitation, as it varies from circumstance to circumstance.  Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303, 310.

When reviewing the legitimacy of zoning ordinances, this court has repeatedly recognized a strong presumption in favor of the validity of an enactment.  Hudson, supra, 9 Ohio St.3d at 71, 9 OBR at 275, 458 N.E.2d at 855; Downing v. Cook (1982), 69 Ohio St.2d 149, 151, 23 O.O.3d 186, 187, 431 N.E.2d 995, 997; Brown v. Cleveland (1981), 66 Ohio St.2d 93, 95, 20 O.O.3d 88, 89, 420 N.E.2d 103, 105.  The party challenging an ordinance bears, at all stages of the proceedings, the burden of demonstrating that the provision is unconstitutional.  Ketchel v. Bainbridge Twp. (1990), 52 Ohio St.3d 239, 557 N.E.2d 779; Mayfield-Dorsh, Inc. v. S. Euclid (1981), 68 Ohio St.2d 156, 157, 22 O.O.3d 388, 429

N.E.2d 159, 160; Hilton v. Toledo (1980), 62 Ohio St.2d 394, 396, 16 O.O.3d 430, 431, 405 N.E.2d 1047, 1049. As this court discussed in Willott v. Beachwood (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 251, 197 N.E.2d 201, 204, a court's authority in determining the validity of zoning regulations is limited in that "the court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts." See, also, Wilson v. Cincinnati (1976), 46 Ohio St.2d 138, 142, 75 O.O.2d 190, 193, 346 N.E.2d 666, 669; Allion v. Toledo (1919), 99 Ohio St. 416, 420, 124 N.E. 237, 238. A court may substitute its judgment for that of the local governing body only when a municipality exercises its zoning power in an arbitrary, confiscatory or unreasonable manner which violates constitutional guaranties. Willott, supra, at paragraph three of the syllabus.

In our examination of the trial court's decision to invalidate Fairfield's zoning ordinance, we are necessarily constrained by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

In considering the case at bar, our focus rests upon the well-established standard of review that where a property owner challenges the constitutionality of a municipal zoning ordinance, that party must demonstrate, beyond fair debate, the zoning classification denies him or her an economically viable use of the zoned land without substantially advancing a legitimate interest in the health, safety, or welfare of the community. Columbia Oldsmobile, Inc. v. Montgomery, supra, 56 Ohio St.3d 60, 564 N.E.2d 455; Ketchel v. Bainbridge Twp., supra, 52 Ohio St.3d at 245, 557 N.E. 2d at 783; Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357; Mayfield-Dorsh, Inc. v. S. Euclid, supra, 68 Ohio St.2d 156, 22 O.O.3d 388, 429 N.E. 2d 159; Superior Uptown, Inc. v. Cleveland (1974), 39 Ohio St.2d 36, 68 O.O.2d 21, 313 N.E.2d 820. See, also, Penn Cent. Transp. Co. v. New York City (1978), 438 U.S. 104, 127, 98 S.Ct. 2646, 2661, 57 L.Ed.2d 631, 650; Goldblatt v. Hempstead (1962), 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130; Euclid v. Ambler Realty Co., supra, 272 U.S. at 395, 47 S.Ct. at 121, 71 L.Ed. at 314. We are essentially being asked to clarify whether the phrase beginning with the word "without" constitutes a second element which must be proved or merely an alternative element which may, by itself, support a finding of unconstitutionality. Both the trial court and the court of appeals concluded Gerijo need only prove one of the two prongs in order to succeed in its challenge of the M-1 light industrial classification. As a result, even though Gerijo could not establish that the zoning scheme denied it a reasonable economic use of the subject property, the lower courts

invalidated the Fairfield zoning ordinance upon the sole basis that the scheme failed to advance a legitimate government interest.

The lower courts' decisions effectively ignore and consequently delete the "economic viability" prong from the established standard of review. As we stated in Columbia Oldsmobile, "we must employ a two-part analysis to pass on the constitutional validity of a zoning ordinance." (Emphasis added.) Id., 56 Ohio St.3d at 62, 564 N.E.2d at 457. Had we intended for evidence of one element to qualify as sufficient proof to invalidate a municipal enactment, there would have been no need to state the second. By repeatedly setting out both economic viability and the advancement of a legitimate governmental interest as two steps of the same test, we intended to require that a challenging party prove each element.

Gerijo contends, however, our actions in the Columbia Oldsmobile decision speak louder than our words. In the first part of the opinion, we determined that the zoning ordinance at issue did not deprive the landowner of an economically viable use. Thereafter, we proceeded to examine whether the legislation advanced a legitimate governmental interest. Gerijo asserts that if this court had intended for the two prongs to be applied conjunctively, our review would have ceased once we concluded the challenging party failed to establish deprivation of economic viability. Gerijo's argument qualifies as the proverbial attempt to make something out of nothing. Our discussion of each element represents nothing more than a thorough application of the test we adopted. In recognition of the accepted principle that legislative bodies are vested with the discretion and authority to create land use policies, one who challenges the legitimacy of a zoning enactment must satisfy a substantial burden of proof in order to prevail. We, therefore, hold that a party who attacks a municipal zoning ordinance on constitutional grounds must prove, beyond fair debate, both that the enactment deprives him or her of an economically viable use and that it fails to advance a legitimate governmental interest.

Applying the foregoing two-prong test to this case, we begin with the issue of economic viability. Generally, a zoning ordinance is not confiscatory so long as the owner is not deprived of the reasonable use of his or her property. Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals (1988), 38 Ohio St.3d 184, 527 N.E.2d 825. When, however, a zoning ordinance denies an owner all uses except those which are highly unlikely or practically impossible under the circumstances, it is impermissibly restrictive. Id. at 186, 527 N.E.2d at 827.

The trial court determined that the Fairfield ordinance did not deprive Gerijo of an economically feasible utilization of its land given the outstanding offer to purchase the property, along with some additional acreage, for $40,000 per acre under the current light industrial zoning classification. In comparing the $40,000 offer with the Trammell Crow offer of $65,000 per acre for a multifamily development, the trial court concluded that "[w]hile this difference in value is disheartening, we do not believe that it is confiscatory." The mere fact that property is not zoned for its highest value and best use does not alone invalidate a zoning ordinance. Ketchel v. Bainbridge Twp.,

supra, 52 Ohio St.3d at 243, 557 N.E. 2d at 783; C. Miller Chevrolet, Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400. Despite Gerijo's arguments in the trial court concerning the confiscatory impact of the zoning ordinance, Gerijo candidly admitted during oral argument before this court that it had not been deprived of the reasonable economic use of its property. Based upon the foregoing, Gerijo clearly failed to satisfy one of the requisite elements for invalidating Fairfield's zoning enactment.

Continuing our analysis under the Columbia Oldsmobile test, we next consider whether the zoning ordinance substantially advances Fairfield's legitimate interest in the health, safety or welfare of the community. Where a municipality makes a determination as to what is beneficial or detrimental to community planning, including the development of land use policies, that decision is first and foremost a legislative matter. Willott, supra, 175 Ohio St. at 560, 26 O.O.2d at 251, 197 N.E.2d at 204. A city may properly exercise its zoning authority in an attempt to preserve and protect the character of designated areas in order to promote the overall quality of life within the city's boundaries. Franchise Developers, Inc. v. Cincinnati (1987), 30 Ohio St.3d 28, 33, 30 OBR 33, 37, 505 N.E.2d 966, 971; Hudson v. Albrecht, Inc., supra, 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. The judgment of the judiciary is not to be substituted for that of the legislature when an issue is fairly debatable so that reasonable minds may differ. Willott, supra, 175 Ohio St. at 560, 26 O.O.2d at 251, 197 N.E.2d at 204; Euclid, supra, at 388, 47 S.Ct. at 118; 71 L.Ed. at 311,.

The evidence presented on behalf of the city of Fairfield indicates the city rezoned Gerijo's property from residential to light industrial in an attempt to provide a buffer between the multifamily residential and commercial sections which surround the subject parcel. The Fairfield Planning Director testified that from the time the 1979 Plan was adopted to 1989, when the city rezoned the Gerijo property, the city experienced numerous problems with multifamily dwellings located directly adjacent to retail and commercial uses. Residents living in the area immediately surrounding the subject parcel had complained to city officials about excessive noise and traffic problems stemming from nearby commercial establishments, which interfered with the inhabitants' enjoyment of residential life.2 By rezoning Gerijo's property for use as a buffer, the city was simply responding to the existing clash between the residential and commercial segments. One of Fairfield's experts testified, "while one would not normally think of M1 [light industrial] as a transition zone, I think in terms of land uses, a reasonable person would recognize, from my land use experience, I recognize the need for transitional use between the retail fronting on State Route Four and the residential property***. [The light industrial zone] does, indeed, provide that needed transition*** and needed buffering ***."

At the conclusion of its review of the evidence, the trial court found that "it [is] axiomatic that all other zoning classifications, other than M-1 and M-2 [industrial], would represent a far less severe contrast in adjacent zonings." We disagree. The city presented credible evidence to support the transitional use of a light industrial district. There was

expert testimony from which the trial court could find that under a light industrial classification, the subject property could be developed into, among other things, a "high tech" industrial park which would have little impact on the environment and would likely operate only during normal business hours. The true range of industrial possibilities, however, is unknown since, as the trial court concluded, "the record is totally void of any evidence which suggests the efforts [by Gerijo] to sell the property as industrial." (Emphasis sic.) Nevertheless, all potential developments will necessarily be constrained by the prescribed list of permissible uses set forth in Chapter 1169 of the Fairfield Zoning Code. The city will also be able to control development of the parcel by virtue of Section 1169.05(b), which specifically prohibits any use which "is, or may become, hazardous, noxious or offensive due to the emission of odor, dust, smoke, cinders, gas, fumes, noise, vibration, beat frequency, refuse matter or water carried waste."

In support of its position that the city arbitrarily rezoned Gerijo's property, the trial court placed great emphasis on its conclusion that, in Fairfield, there was not a single developed M-1 district next to a residential zone. Placement of a light industrial area to the west of State Route 4 also conflicts with the city's express intent to confine all industrial development to the east side of Route 4. These issues, however, are not fatal to the city's actions. Fairfield's efforts in this case represent a sincere attempt by the local governing body to respond to very specific land use problems that arose as the municipality expanded. Use of the light industrial classification as a transitional zone was specifically tailored to meet the needs of areas surrounding Gerijo's property. We will not substitute our opinion for the local zoning expertise of the legislative entity when the evidence presented clearly contradicts a finding that the M-1 zoning was arbitrary or that it failed to substantially advance a legitimate governmental interest.

Besides citing the need for a buffer between residential and commercial areas, the city denied Gerijo's proposed zoning change for the additional reason that it conflicted with the stated objective of achieving a seventy-thirty ratio between single-family and multifamily developments. Had the city approved Gerijo's request, the number of multifamily dwellings would have exceeded the number of single-family homes. Creating a goal and a zoning scheme that are both designed to preserve a balance between these types of residential uses represents a legitimate use of a municipality's police power. Belle Terre v. Boraas (1974), 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797; Euclid, supra, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

The trial court labeled Fairfield's desired housing mix a "worthy objective" but then struck down the zoning classification as an attempt to "arbitrarily and capriciously 'zone out' multifamily units." Upon review of the record, we conclude that Fairfield was not attempting to arbitrarily banish multifamily dwellings, but rather was striving toward its stated goal of a balanced housing population. Contrary to the court of appeals' position, we find nothing in the record to suggest that the city had deviated from this stated objective on prior occasions. As a result, the Fairfield City Council acted well within its scope of

authority when it denied Gerijo's application for reclassification.

For the above stated reasons, we find that Gerijo failed to prove that the Fairfield zoning classification both denied Gerijo a reasonable economic use of its property and failed to advance a legitimate interest in the health, safety or welfare of the community. The record supports Fairfield's decision to zone the subject property as a light industrial district in order to serve as a buffer between residential and commercial segments of the city. The judgment of the court of appeals is therefore reversed.

Judgment reversed.

Moyer, C.J., Douglas and F.E. Sweeney, JJ., concur.
A.W. Sweeney, Wright and Pfeifer, JJ., dissent.


FOOTNOTES

1    Section 1169.04 of the zoning code, entitled "Required Conditions," states:

"Processes and equipment employed in goods processed or sold shall be limited to those which are not objectionable by reason of odor, dust, smoke, cinders, gas, fumes, noise, vibration, refuse matter or water carried waste."

Section 1169.05 sets out "Prohibited Uses." Subsection (B) states:

"No use shall be permitted or authorized to be established or maintained which, when conducted under adequate conditions and safeguards, in compliance with the provisions of the Zoning Ordinance and any additional conditions or requirements prescribed by the Planning Commission is, or may become, hazardous, noxious or offensive due to the emission of odor, dust, smoke, cinders, gas, fumes, noise, vibration, beat frequency, refuse matter or water carried waste."

2    The record reveals numerous citizen complaints filed with the Fairfield City Council and/or Mayor protesting the noise, traffic and general change in atmosphere created by the close proximity of commercial developments to the residential areas. Included within the record is a petition signed by more than fifty Fairfield residents who live in the area surrounding the Gerijo property asking the city council to take action in remedying these problems.

Pfeifer, J.,    dissenting.    The majority uses an overly generous test to determine the constitutionality of the Fairfield zoning ordinance. When the correct analysis is applied, the ordinance fails to pass constitutional scrutiny.

I

Columbia Oldsmobile, Inc. v. Montgomery (1990), 56 Ohio St.3d 60, 564 N.E.2d 455, delineates the rule at issue in this case. In Columbia Oldsmobile, we held that "'[i]n order to invalidate a zoning regulation on constitutional grounds, the parties attacking it must demonstrate, beyond fair debate, that the zoning classification denies them the economically viable use of their land without substantially advancing a legitimate interest in the health, safety, or welfare of the community.* * *'" (Citations omitted and emphasis added.) Id. at 62, 564 N.E.2d at 457. The majority holds that the word "without" means "and." Thus, in order to invalidate a zoning ordinance on

constitutional grounds a plaintiff must prove both elements of the test. It is hard to imagine a zoning scheme that would not pass the majority's conjunctive test. Fortunately, the United States Supreme Court has provided a test that provides affected landowners with refuge from unreasonable governmental action.

The United States Supreme Court in Agins v. Tiburon (1980), 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d. 106, unanimously concluded that a disjunctive test should be used when scrutinizing a zoning ordinance. The Agins court stated that "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests * * * , or denies an owner economically viable use of his land." (Citations omitted and emphasis added.) Id. at 260, 100 S.Ct. at 2141, 65 L.Ed.2d at 112.

In the present case, a disjunctive test should also be used.

## II

In applying the disjunctive test used in Agins to the present case, we should conclude that the Fairfield zoning ordinance is unconstitutional because the evidence presented at trial supports the trial court's conclusion that the ordinance does not substantially advance a legitimate interest in health, safety or welfare of the community.

The ordinance is arbitrary and indefensible. The city of Fairfield's 1979 land use plan confined all industrial zones to the east side of Route 4. At that time, Gerijo's land was zoned multifamily residential. In 1989, the city passed a new land use plan which designated Gerijo's property, which lies to the west of Route 4, as light industrial even though the surrounding area was residential. The residential districts in Fairfield shape a horseshoe enveloping Gerijo's property. The city alleges that the 1989 land use plan attempted to establish a ratio of seventy percent single-family residences to thirty percent multifamily residences. The zoning change of Gerijo's property from a multifamily designation to industrial designation purportedly facilitated this goal. As the trial court concluded, however, evidence at trial showed that Fairfield had permitted other multifamily residential projects since the land use plan was adopted. At trial, Fairfield's planning director testified that the current ratio of single-family to multifamily land use was closer to a fifty-fifty ratio. In sum, the city of Fairfield unfairly singles out the Gerijo property to be a victim of an arbitrary scheme.

The judgment of the court of appeals should be affirmed.

A.W. Sweeney and Wright, JJ., concur in the foregoing dissenting opinion.