OPINION
Appellant, Elizabeth Hickok, takes this timely appeal from a judgment rendered by the Court of Common Pleas of Marion County, Juvenile Division, terminating Elizabeth's parental rights, and granting permanent care and custody of her three minor children to Appellee, Marion County Children's Services Board (hereinafter "CSB"). For the reasons expressed in the following opinion, we affirm the judgment of the trial court.
Elizabeth's children, Geraldine Hickok, d.o.b. January 30, 1989; Catherine Hickok, d.o.b. December 21, 1989; and Thomas Powell, d.o.b. May 11, 1992, were taken into the emergency custody of CSB in September, 1998. Although the record is somewhat unclear, the testimony indicates the causes for removal were, among other things, unsuitable living conditions; domestic violence in the home; and Elizabeth's history of drug abuse. Upon stipulation of the parties, the court adjudicated the children to be dependent and neglected, and ordered CSB to assume temporary custody.
The Hickok children remained in foster care throughout 1998 and 1999. On November 2, 1999, CSB filed a motion requesting the court to modify the temporary custody order to one of permanent custody. The motion was based upon the mother's continued use of marijuana; her lack of cooperation in completing addiction treatment; and her inability to secure a stable home for the children. The trial court consolidated the children's cases and conducted a hearing on the motion on February 15, 2000. After examining the evidence presented, the court issued a March 28, 2000 judgment entry granting CSB's motion by finding that permanent custody with the agency was in the children's best interest, and that they should not be placed with their mother. It should be noted that paternity has not been established on any of the children, and the alleged fathers did not participate in the proceedings.
This appeal followed wherein Elizabeth asserts nine assignments of error for our review and consideration. Similar to the trial court, we have combined the children's separate cases for purposes of this proceeding.
 Assignment of Error I It was err [sic] to find by clear [and] convincing evidence that the Mother failed to substantially remedy the conditions that initially caused the children to be placed outside the home under ORC Section 2151.414(E)(1).
As a general matter, we note that an appellate court must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts." In re Brodbeck (1994),97 Ohio App.3d 652, 659, quoting Gerijo, Inc. v. Fairfield
(1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536. Judgments are not subject to reversal if supported by "some competent, credible evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
The Ohio Revised Code provides that a clear and convincing standard must be met in order to properly terminate parental rights. See R.C. 2151.414. Clear and convincing evidence is "[t]hat measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus.
R.C. 2151.414(B)(1) states that when deciding whether to permanently divest parents of their rights, a trial court must apply a two-prong test. The court must first determine whether such action will serve the best interest of the children. R.C.2151.414(D)(1) through (5) sets forth the relevant factors that a court must consider in answering the best interest question. These factors include the relationship between the child and the parent; the wishes of the child, whether expressed directly by the child or through a court-appointed guardian ad litem; and the custodial history of the child.
Once the court determines that granting permanent custody to the movant would be in the child's best interest, the court must then move on to consider whether the child "cannot be placed with either parent within a reasonable period of time or should not be placed with the parents * * *." R.C. 2151.414(E). In doing so, the court is required to consider the factors listed in R.C.2151.414(E)(1) through (16). If one or more of these factors exists, the court must enter a finding that the child cannot or should not be placed with either parent.
In this assignment of error, Elizabeth specifically complains that the trial court erred in concluding that Geraldine, Catherine, and Thomas should not be placed with her based upon the applicability of R.C. 2151.414(E)(1). This section of the Ohio Revised Code states:
 Following placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
As we explained previously, the record appears to reveal that the children were removed from Elizabeth's home in the fall of 1998 for several reasons, including unsuitable housing and the mother's continued abuse of marijuana. The evidence adduced at trial indicates that Elizabeth has changed residences approximately six times since 1998. None of these residences were secured in Elizabeth's name, and at times she would fail to inform the caseworker of a change of address. During this time, Elizabeth has resided with her mother, which was deemed to be inappropriate housing for the children due to over-crowding, and she also spent certain periods of time "camping out" at Delaware Park.
With regard to her current living situation, Elizabeth testified that she resides in an apartment leased by her boyfriend. Since Elizabeth has no means of income, her boyfriend pays the rent and all expenses associated with the apartment, yet he does not live with Elizabeth because of prior incidents of domestic violence. Regardless of Elizabeth's insistence that her current living situation is appropriate, the evidence does not suggest stability. Indeed, Elizabeth's boyfriend, who is her only source of financial support, and from whom she is presently estranged, is not legally bound to provide for Elizabeth or her three children. Elizabeth offered no evidence to illustrate to the court that she would be able to secure her own housing in the event that this relationship failed. Accord, In the Matter ofCranston (Aug. 26, 1998), Marion App. Nos. 9-98-5 9-98-6, unreported.
In addition to her failure to secure suitable housing, records from Marion General Hospital confirm that Elizabeth has tested positive for marijuana use thirteen times since the fall of 1998. In fact, she tested positive for the drug just days before the children's removal. Witnesses stated that Elizabeth has been abusing marijuana for twenty-five years, that her dependence on the drug is "severe", and that it interferes with her ability to parent the children. Although the case plan directed Elizabeth to obtain treatment for her addiction, she has refused to cooperate.
In June 1999, CSB arranged for Elizabeth to spend sixty days in New Beginnings Recovery House, a residential treatment facility located in Marion, Ohio. The CSB caseworker transported her to the facility, and Elizabeth participated in the initial admittance procedures. However, Elizabeth left New Beginnings a few hours later after becoming hostile with the staff. Thereafter, in November 1999, Elizabeth went to Marion General Hospital where she met with Chemical Dependency Therapist, Wilburn Murrell. Murrell met with Elizabeth once in order to complete an addiction assessment. Although he recommended intensive outpatient or residential treatment, he stated that Elizabeth was resistant to any type of treatment at that time. She had scheduled another appointment with Murrell, but failed to appear.
In light of this and other evidence, we find that the trial court did not err in concluding that the mother has failed to remedy the problems that initially caused the children to be removed from the home. Consequently, Appellant's first assignment of error is overruled.
 Assignment of Error II It was err [sic] to find by clear and convincing evidence that Marion County Children's Services Board provided diligent efforts to assist the Mother with regard to marijuana use or parenting skills, as Children's Services failed to provide individual therapy and instead insisted that the Mother attend group therapy, despite the fact that the Mother was unable to tolerate group therapy.
In this assignment of error, Elizabeth asserts that CSB failed to diligently assist her in complying with the case plan because the services offered required her to attend group therapy sessions rather than individual therapy. While much of Elizabeth's testimony focused upon the fact that that she becomes extremely nervous and agitated when forced to participate in group situations, Alan Howell, the on-going caseworker in this matter, stated that Elizabeth has never communicated this problem to him. Rather, she would fail to partake in or complete various recommended programs without any explanation. Thus, we find that Elizabeth's alleged difficulties have no effect on whether the agency was diligent in its efforts to assist her.
Appellant's second assignment of error is overruled.
 Assignment of Error III It was err [sic] to find by clear and convincing evidence that the Mother suffered from a chronic mental illness, chronic emotional illness or chemical dependency, as the Trial Court failed to grant the mother's motion for a psychological examination prior to the hearing.
The judgment entry terminating Elizabeth's parental rights indicates that the court found, in accordance with R.C.2151.414(E)(2), that the children could not or should not be placed with the mother because she suffered from chronic mental illness and drug abuse. Although Elizabeth assigns error to this particular conclusion, we find it unnecessary to fully address the issue. The plain language of R.C. 2151.414(E) states that the court must enter a finding that the child cannot or should not be placed with either parent in the event that one or more of the listed factors applies. See, also, Inre Weatherholt (Feb. 4, 2000), Seneca App. Nos. 13-99-31 
13-99-32, unreported. In discussing Elizabeth's first assignment of error, we concluded that the trial court correctly found R.C. 2151.414(E)(1) to be applicable to the present matter. Consequently, the issue of whether the trial court erred in also relying on R.C. 2151.414(E)(2) as a basis for its decision is irrelevant.
Appellant's third assignment of error is overruled.
 Assignment of Error IV It was error to admit the complete Marion County Children's Services Board file as it was full of hearsay and conjecture and a proper foundation was not established for the entire file.
Despite the language used in this assignment of error, it is apparent from the record that CSB's entire case file was never admitted into evidence nor was its admission requested by counsel for any of the parties. A careful review of the hearing transcript demonstrates that certain employees of CSB evidently referred to the file while testifying for the limited purpose of refreshing recollection. Evid.R. 612 generally permits a witness to refer to a writing to refresh his memory for the purpose of testifying. Nonetheless, we find it unnecessary to provide a more detailed explanation and analysis of this particular evidentiary rule because the transcript also clearly reveals that counsel for Elizabeth never entered an objection to the use of the file. In fact, CSB caseworker, Alan Howell, referred to notes and dictation contained in the file mostly during cross-examination from Elizabeth's attorney. Therefore, we find that an argument as to any mention of the file was either waived for purposes of appeal, or is considered invited error on the part of the mother.
Appellant's fourth assignment of error is overruled.
 Assignment of Error V It was error to admit the Dr. Christopher Hasseltine letter as a proper foundation was not established, the letter was hearsay, and Dr. Christopher Hasseltine was not made available for Defendant to cross-examine. The letter was admitted as Children's Services Exhibit 9 over the Mother's objection.
Even if we were to assume for the sake of argument that the letter from Dr. Christopher Hasseltine, a psychiatrist who examined Elizabeth for certain limited purposes, was admitted in contravention of the Ohio Rules of Evidence, we would not alter our opinion to affirm this case. From the findings of fact and conclusions of law, it is obvious that the trial court did not rely on this particular letter in order to enter the finding that R.C. 2151.414(E)(1) is applicable to Elizabeth's case. Since we have already concluded that parental rights were properly terminated on that finding alone, we need not address how Dr. Hasseltine's letter impacted the remainder of the court's findings under R.C. 2151.414(E). See In re Piatt
(June 29, 1999), Marion App. Nos. 9-99-04, 9-99-10, unreported, holding that an appellate court should not overturn a determination of permanent custody unless it appears that the trial court actually relied upon inadmissible evidence in reaching its decision. Thus, Elizabeth's fifth assignment of error is overruled.
For the sake of brevity, we have elected to consider the remainder of Elizabeth's arguments simultaneously. They have been set forth as follows:
Assignment of Error VI
 It was error for the Juvenile Court to rely on subparagraphs (E)(2), (E)(4) or (E)(16) of ORC Section 2151.414 when Children's Services expressly stated that were [sic] going to rely on subparagraphs (E)(1) and (E)(9) * * *.
Assignment of Error VII
 It was error for the Juvenile Court to rely on subparagraphs (E)(9) of ORC 2151.414 because there was only a single showing of the Mother rejecting treatment or refusing to participate in further treatment.
Assignment of Error VIII
 It was error for the Juvenile Court to rely on subparagraphs (E)(9) of ORC Section 2151.414 because there was no evidence that each child was placed at substantial risk of harm or two or more specific instances as a result of the Mother's abuse of alcohol of drugs.
Assignment of Error IX
 It was error for the Juvenile Court to rely on the testimony of Angela Davis to justify an award of permanent custody under subparagraph (16) of ORC Section 2151.414
when her testimony did not support these conclusions.
In these assignments of error, Elizabeth essentially asserts that the trial court erred in making various findings under R.C. 2151.414(E). Again, the plain language of that statute states that the trial court must enter a finding that the child cannot or should not be placed with his parents if one or more of the sixteen enumerated factors exist. See, also, In reWeatherholt (Feb. 4, 2000), Seneca App. Nos. 13-99-31 
13-99-32, unreported. We have already concluded that the record contains competent, credible evidence to support the trial court's finding that R.C. 2151.414(E)(1) applies to this case. Thus, Elizabeth's arguments pertaining to the several other factors that the court also found applicable are without merit.
Appellant's sixth, seventh, eighth, and ninth assignments of error are overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
 __________________________ WALTERS, J.
HADLEY, P.J., and BRYANT, J. concur.