OPINION
Appellant, Diane Cornwell, appeals from a judgment by the Allen County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent care and custody of her minor child to Appellee, Allen County Children's Services Board. Appellant claims that the findings of the trial court were against the manifest weight of the evidence. For the reasons expressed in the following opinion, we affirm the judgment of the trial court.
On January 6, 1999, a complaint was filed by the Allen County Children Services Board ("ACCSB") alleging that Thomas Blair ("Thomas") was an abused child because he had engaged in sexual contact with an adult person, and his mother, Diane Cornwell ("Appellant"), failed to adequately supervise and protect him due to low intellectual functioning, failed to facilitate prescribed therapeutic counseling, and failed to keep the home in a sanitary condition. Notably, Thomas has apparently been abandoned by his father. Pursuant to an entry dated June 11, 1999, Thomas was adjudicated to be a dependant, neglected, and abused child. Thereafter, the trial court ordered that Thomas be placed under protective supervision by the ACCSB, with conditions.
The ACCSB filed a case plan to help Appellant meet her child's needs. The plan focused on Appellant's history of child abuse and neglect, her lack of parenting skills, her intellectual impairments, and her inability to protect her children. Additionally, Appellant was expected to participate in individual and family counseling, to complete parenting classes and work with a family aide, and to undergo I.Q. testing. At the same time, Thomas was in a play therapy counseling program to deal with his behavior and issues surrounding his sexual victimization.
On December 6, 1999, a Motion to Extend Protective Supervision was filed because the case plan goals and objectives had not been significantly complied with. The magistrate found that little progress had been made concerning the case plan; specifically, Appellant had not been attending the court ordered counseling, and Appellant had failed to take Thomas to his play therapy sessions. By an entry dated February 2, 2000, the disposition of Protective Supervision was continued for six months.
Appellant completed a psychological evaluation on February 28, 2000, including an I.Q. test, which revealed that her overall mental ability is limited and that she is mildly retarded. Consequently, in order for Appellant to complete her case plan the goals and objectives would have to be very basic, and additional support by the ACCSB would be necessary. At a review hearing on March 1, 2000, the trial court ordered further support of caseworkers to assist Appellant with transportation to various counseling services and programs to improve her parenting skills.
On June 9, 2000, a Motion to Extend Protective Supervision was filed by the ACCSB because of Appellant's continued failure to comply with the case plan's goals and objectives. Shortly thereafter, another hearing was held for consideration of the Protective Supervision Motion and for a Contempt Motion filed against Appellant. Appellant failed to appear and the guardian ad litem assigned to Thomas requested and was granted a shelter care hearing.
The shelter care hearing was held on June 26, 2000, and the assigned caseworker testified that Appellant's home conditions were horrible. She also testified that she and the family aide had been threatened with bodily harm at Appellant's house. Furthermore, Appellant had moved nine times and failed to take Thomas to counseling appointments. Pursuant to this hearing, Thomas was placed in the shelter care of the ACCSB.
On August 28, 2000, a hearing was held before the magistrate on the Motion to Extend Protective Supervision, the Motion for Contempt, and a Motion for Modification, which if granted would continue Thomas' custody with the ACCSB. The ACCSB withdrew the Motion to Extend Protective Supervision and the Motion for Contempt. Appellant indicated that she had no objection to Thomas' placement with the ACCSB, and testimony revealed that Thomas was making improvements in foster care. Therefore, the magistrate recommended and the trial court ordered that custody by the ACCSB be continued, and supervised visitation was granted to Appellant.
While Appellant had visitation rights, she only took advantage of them sporadically, and eventually the visits had a detrimental effect on Thomas. On December 5, 2000, the ACCSB filed a Motion Requesting Permanent Custody with the agency because of Appellant's failure to remedy problems causing the temporary custody, her failure to support and communicate with the child when able to do so, her unwillingness to provide necessities to her child such as clothing, and her failure to protect Thomas from physical and emotional neglect. Based upon testimony from several witnesses and the guardian ad litem's recommendation, the trial court granted permanent custody of Thomas to the ACCSB pursuant to R.C. 2151.414.
From this decision Appellant asserts the following two assignments of error. Because both are sufficiently related, they will be discussed together.
Assignment of Error I
 The trial court erred as a matter of law in determining that Thomas Blair could not be placed in his mother's custody within a reasonable time, as its finding of clear and convincing evidence was against the manifest weight of the evidence.
Assignment of Error II
 The trial court abused its discretion in granting the motion for permanent custody to Allen County Children's Services Board as said finding was against the manifest weight of the evidence.
As an initial matter, we note that an appellate court must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts."[1] Judgments are not subject to reversal if supported by "some competent, credible evidence."[2]
The Ohio Revised Code provides that a clear and convincing evidence standard must be utilized when determining permanent termination of parental rights.[3] Clear and convincing evidence is "that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[4]
R.C. 2151.414(B)(1) states that when deciding whether to permanently divest parents of their custody rights, a trial court must apply a two-prong test. The court must first determine whether such action, by clear and convincing evidence, will serve the best interests of the child.[5] Once a court determines that granting permanent custody to the movant would be in the child's best interest, the court must then consider whether one of the factors in R.C. 2151.414(B)(1)(a) through (d) applies. The relevant factor in this case is whether the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."[6]
In her first assignment of error, Appellant specifically argues that the trial court erred when it found that Thomas could not be placed in her custody within a reasonable time. When a trial court determines that a child cannot be placed with his parents within a reasonable time or should not be placed with either parent the court must find that one or more factors exist pursuant to R.C. 2151.414(E)(1) through (16) as to each of the child's parents.
Competent and credible testimony was presented from various witnesses, including the guardian ad litem assigned to Thomas, various social workers with continuing contact to the parties involved, Thomas' foster mother, and court ordered counselors of both Thomas and Appellant. From this testimony, the trial court found by clear and convincing evidence that three of the factors listed in R.C. 2151.414(E) were established. Because only one of the enumerated factors must be established, we will limit our discussion to R.C. 2151.414(E)(4), which we find to be dispositive of this issue.
R.C. 2151.414(E)(4) asks whether
 [t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.][7]
Because of the inability to locate Thomas' father throughout the entirety of the proceedings, this element is sufficiently met as to him. Furthermore, several justifications exist for Appellant's failure to overcome the burden of this provision.
First, Appellant has repeatedly moved from one residence to another over the course of a short period of time. Also, the evidence demonstrated that at least on two occasions Appellant's house was found by the ACCSB to be in a deplorable condition, which raises health concerns, especially when young children are present. Additional evidence supports the trial court's finding that Appellant was unable to sufficiently provide proper clothing and other basic necessities for her child. Moreover, despite instructions by the ACCSB, on at least two occasions, Appellant allowed alleged sexual perpetrators to interact with Thomas at her home, and testimony from several witnesses indicated that Thomas does exhibit characteristics of being sexually abused.
Finally, the evidence demonstrates that while Thomas was in the temporary custody of the ACCSB, Appellant had thirty-four opportunities to visit her child; however, without notification, she neglected to show up at the scheduled visitations twenty-six times. When Appellant did participate in visitation she failed to interact with the child.
Competent and credible testimony, therefore, supports the trial court's finding that Thomas cannot be placed with his parents within a reasonable time or should not be placed with either parent pursuant to R.C.2151.414(B)(1)(a), (E)(4). Therefore, Appellant's first assignment of error is overruled.
After finding that Thomas cannot be placed with either parent, we now turn to whether his best interests would be served by granting permanent custody to the ACCSB. R.C. 2151.414(D)(1) through (5) sets forth the relevant factors that a court must consider in determining the best interests of the child. These factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child * * * with due regard for the maturity of the child;
 (3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.[8]
The trial court, after considering the factors of R.C. 2151.414(D), found by clear and convincing evidence that the best interests of Thomas would be served by awarding permanent custody to the ACCSB. For the following reasons we find that this determination is adequately supported by the evidence.
Pursuant to R.C. 2151.414(D)(1), several factors presented, as mentioned above, adequately support a finding that Thomas' interaction with people living in Appellant's home, including Appellant, has a detrimental effect upon his well being. Furthermore, testimony supports the conclusion that Thomas' foster parents have made vast improvements with his social skills, including teaching him how to use utensils while eating instead of his fingers and how to carry on general conversation. Also, since leaving Appellant's home, Thomas has learned the alphabet and colors. Therefore, we find that the evidence clearly supports the trial court's finding that living with Appellant has had a detrimental effect upon the child, while his interaction with his foster parents is positive.
R.C. 2141.414(D)(5) is also satisfied by the evidence in this case. Subsection (E)(10) lists that abandonment by a parent should be taken into consideration when deciding the best interests of the child. The evidence clearly supports the trial court's finding that Thomas' father has abandoned him.
The trial court noted that it considered all the factors in R.C. 2141.414(D) to determine whether permanent custody would be in Thomas' best interests. As demonstrated by the facts of this case, various other reasons clearly justify the trial court's conclusion that permanent custody should be granted to ACCSB. These other relevant factors include Appellant's failure to satisfy her court ordered case plan and her failure to attend her own counseling sessions provided by the ACCSB to help cope with her own issues of neglect and abuse. By failing to participate in the wide range of services provided to her, Appellant contributed to the finding that Thomas would be better cared for in another home.
Because clear and convincing evidence supports the trial court's finding that Thomas cannot be placed with either of his parents within a reasonable time and because it would not be in the child's best interests for Appellant to resume custody, we find Appellant's second assignment of error to be without merit. Consequently, Appellant's second assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
SHAW and BRYANT, J.J., concur.
[1] In re Brodbeck (1994), 97 Ohio App.3d 652, 659, quoting Gerijo, Incv. Fairfield (1994), 70 Ohio St.3d 223, 226.
[2] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
[3] R.C. 2151.414.
[4] Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; In re Hickok (Sept. 1, 2000), Marion Nos. 9-2000-27, 9-2000-28, 9-2000-29, unreported.
[5] R.C. 2151.414(B)(1).
[6] R.C. 2151.414(B)(1)(a).
[7] R.C. 2151.414(E)(4).
[8] R.C. 2151.414(D).