[Cite as *In re J.M.*, 2023-Ohio-1409.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| J.M., JR. AND | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| J.M. | : | |
| | : | |
| MINOR CHILDREN | : | Case Nos. 2023 CA 00008 |
| | : | 2023 CA 00009 |
| | : | |
| | : | O P I N I O N |
| | : | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Family Court Division, Case Nos. 2021 JCV 986 & 2021 JCV 987 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | April 27, 2023 |

APPEARANCES:

For Appellant Mother

KATHALEEN S. O'BRIEN
116 Cleveland Avenue, NW
Suite 303
Canton, OH  44702

D. COLEMAN BOND
116 Cleveland Avenue, NW
Suite 600
Canton, OH  44702

For Appellee SCDJFS

BRANDON J. WALTENBAUGH
402 2nd Street, SE
Canton, OH  44702

Guardian ad Litem

BERNARD HUNT
2395 McGinty Road
North Canton, OH  44720

*King, J.*

{¶ 1}   Appellant mother, Co.K., appeals the January 4, 2023 judgment entries of the Court of Common Pleas of Stark County, Ohio, Family Court Division, terminating her parental rights and granting permanent custody of her children to appellee, Stark County Department of Job and Family Services ("SCDJF").  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 1, 2021, SCDJF filed complaints alleging two children, Ja.M., Jr. born January 2020 and Jo.M. born June 2021, to be dependent and/or neglected. Mother of the children is appellant herein; established father of Ja.M., Jr. is Ja.M.; legal father of Jo.M. is Ch.K., but paternity was not established.  Initial concerns included mother's homelessness, her drug use, threats to commit suicide, and exposing her children to domestic violence.  An emergency shelter care hearing was held on October 1, 2021, and the children were placed in the temporary custody of SCDJF.

{¶ 3}   On October 27, 2021, initial case plans were filed with the goal being reunification.

{¶ 4}   On December 21, 2021, mother stipulated to dependency.  By decisions filed December 22, 2021, the trial court found the children to be dependent and continued the children's temporary custody with SCDJF.  The trial court approved and adopted the case plans.

{¶ 5}   On August 19, 2022, SCDJF filed motions for permanent custody of the children.  On August 25, 2022, mother filed motions to extend temporary custody for six months.  The hearing on the permanent custody motions was set for October 19, 2022. On October 18, 2022, mother requested a continuance which was granted until December

20, 2022.  On that date, a hearing was held before the trial court.  By judgment entries filed January 4, 2023, the trial court terminated all parental rights and granted permanent custody of the children to SCDJF.  Findings of fact and conclusions of law were filed contemporaneously with the judgment entries.

{¶ 6}   Mother filed appeals and assigned the following errors in each case:

I

{¶ 7}   "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 8}   "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 9}   In her two assignments of error, mother claims the trial court's decisions in finding grounds existed for permanent custody and the best interests of the children would be best served by granting permanent custody of the children to SCDJF were against the manifest weight of the evidence.  We disagree.

{¶ 10} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.)

{¶ 11} In weighing the evidence however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 12} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

>       (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

>       (b) The child is abandoned.

>       (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

>       (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

>       (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 13} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a

reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 14} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(16) Any other factor the court considers relevant.

{¶ 15} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} During the hearing, the trial court heard from the ongoing family caseworker, mother's parenting evaluator, mother's substance abuse counselor, mother's mental health counselor, the guardian ad litem, and mother. As explained by our brethren from the Second District in *In re A.J.S. & R.S.,* 2d Dist. Miami No. 2007CA2, 2007-Ohio-3433, ¶ 22:

Accordingly, issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. In this regard, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Finally, an appellate court must adhere to every reasonable presumption in favor of the trial court's judgment and findings of

fact.  *In re Brodbeck,* 97 Ohio App.3d 652, 659, 647 N.E.2d 240, citing *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 1994-Ohio-432, 638 N.E.2d 533.

{¶ 17} Further, " 'the discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' "  *In re Mauzy Children,* 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, *2 (Nov. 13, 2000), quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

{¶ 18} The caseworker testified mother was to complete a parenting evaluation and follow all resulting recommendations, complete a substance abuse assessment and follow all resulting recommendations, complete drug screening, engage in mental health treatment, obtain appropriate and independent housing, and successfully complete parenting classes at Goodwill Parenting.  T. at 7.  Mother completed the parenting evaluation and the substance abuse assessment, and engaged in substance abuse and mental health treatment.  *Id.*  The caseworker explained mother was often homeless, but did obtain appropriate housing in May/June 2022.  T. at 13.  Mother's participation in mental health treatment was not consistent and she had several no shows.  T. at 14.  She was not in compliance with her treatment plan for substance abuse, did not make significant progress in treatment, and had missed over sixty drug screens.  T. at 14-15.  Mother's last drug screen in November 2022 was positive for methamphetamines, amphetamines, and marijuana.  T. at 15.  The caseworker testified mother regularly tested

positive for those substances.  *Id.*  While mother owned up to the fact that she struggled with substance abuse, there really was no progress after about a year into the case.  T. at 15-16.  Mother could not initiate parenting classes because she failed to achieve three to four months of sobriety before she could be accepted into the program.  T. at 16.  Mother was consistent with visitation and the caseworker did not have any concerns with the visitation with mother.  T. at 26.

{¶ 19} The parenting evaluator testified mother's evaluation raised several concerns regarding her parenting ability.[1]  T. at 43-44.  The evaluator was concerned with mother's mental health which was not well managed, her significant ongoing substance abuse and her elevated stress levels, and the children's exposure to domestically violent relationships.  T. at 44.  The evaluator testified her diagnostic impressions of mother included adjustment disorder with depressed mood, major depressive disorder, recurrent severe without psychotic features, unspecified trauma and stressor-related disorder, severe cannabis use disorder, alcohol use disorder, amphetamine use disorder, and features of dependent personality disorder.  T. at 44-45.  The evaluator testified with mother's below average intellectual abilities, specifically her verbal abilities, she would have difficulties understanding and retaining parenting instruction.  T. at 45-46.  The evaluator recommended that mother continue to participate in weekly intensive individual counseling, continue to submit random drug screens, and participate in intensive outpatient substance abuse counseling.  T. at 46.  After a four-month period of sobriety, mother needed to successfully complete parenting classes, although the classes would

---

[1]The parenting evaluator has master's degrees in clinical psychology and health and crisis communication, but is not licensed.  T. at 40.  She works under the licensure of a licensed psychologist.  *Id.*

have to be highly structured to check and recheck "to ensure her comprehension and transfer of learning." *Id.* Mother attended three of five scheduled appointments. T. at 53.

{¶ 20} The substance abuse counselor testified mother was sporadic in her attendance, but was making progress because "she would always return" which indicated a desire to change. T. at 58-59. It was common for individuals with substance abuse issues to relapse. T. at 59. In the month of October 2022, mother drug tested twelve times and was positive for drugs five times. T. at 62.

{¶ 21} The mental health counselor testified mother was inconsistent with her treatment and missed nine out of sixteen appointments. T. at 67.

{¶ 22} Appellant testified she first thought she could go to intensive outpatient services "and just fool people, and just play it all," but now acknowledges she has a problem and is taking the concerns more seriously. T. at 73, 76, 78. On the day of the hearing, she was planning to start inpatient drug treatment for thirty days or however long it took. T. at 77. Mother loves her children, but needed time to accept she had a problem. T. at 79. She missed appointments due to medical and transportation issues. T. at 82-84.

{¶ 23} In its January 4, 2023 judgment entries, the trial court found notwithstanding reasonable case planning and SCDJF's diligent efforts, mother "has failed to remedy the conditions that caused the child[ren] to be placed." The children could not "be placed with either parent at this time or within a reasonable period of time" and "should not be placed with either parent." The trial court made extensive findings of fact relative to the factors under R.C. 2151.414. January 4, 2023 Findings of Fact and Conclusions of Law

at 8-15.[2]  The trial court noted mother's participation in mental health services "has been inconsistent" and she "has not been consistent enough to make meaningful progress." *Id.* at 9.  Mother has "engaged in minimal participation" in substance abuse treatment and has "not maintained sobriety for even a month." *Id.* at 10.  The trial court found "14 months into the case and no progress has been made by Mother on her sobriety." *Id.*  The trial court determined "there has not been substantial progress made by the parents to justify an extension." *Id.* at 11.  During the four-month continuance from October to December, mother "did not substantially comply with her case plans" and "did not reduce the risk that caused the removal despite reasonable and diligent efforts by the Agency." *Id.*  The trial court denied mother's motion to extend temporary custody, finding she "has not shown substantial progress with her case plan goals and sobriety," "has had no period of sobriety in 14 months," and "has not shown that with an extension of 6 months, she will be able to remedy the concerns" which resulted in the children's removal. *Id.* at 15.

{¶ 24} During the best interest phase of the hearing, the caseworker testified the children were placed together in foster care, they appeared to be "well loved" in the foster home, and were bonded to the foster parents and the other children in the home.  T. at 91-92.  The children and mother appeared bonded as well.  T. at 93.  The foster family was interested in adopting the children.  T. at 97.  The caseworker agreed permanent custody was in the children's best interests.  T. at 96.  The caseworker did not support an extension because the longer the children did not have permanency, the harder it was for them.  T. at 97.  Recently, the children "have seemed to become less open and eager to

---

[2]Quotations are taken from the Findings of Fact and Conclusions of Law filed in Case No. 2021 JCV 00987.  While identical in each case, the pagination is slightly off in Case No. 2021 JCV 00986 as to some quotes.

be at the visitation" with mother. *Id.* The caseworker testified whenever the children return to the foster home, "as soon as they see the foster home they start screaming in excitement, to be back to their, what they consider their home." *Id.*

{¶ 25} The guardian ad litem stated the "children deserve some permanency" and the parents "have been inconsistent in their case plan services." T. at 99. The guardian agreed permanent custody to SCDJF was in the children's best interests. T. at 99-100. The guardian opined the parents "have had enough time to show the court that they want to go forward and do the case plan services that they need to do." T. at 100. In his report under "Recommendations" the guardian noted, "[w]hile mother has recently begun counseling, she has consistently tested positive for drugs throughout the pendency of this case" and the "children deserve permanency." Guardian ad Litem Report filed December 9, 2022.

{¶ 26} As for best interests, the trial court made findings and determined "the harm caused by severing any bond with the parents is outweighed by the benefits of permanence" and the children deserve to be "in a stable, loving environment." January 4, 2023 Findings of Fact and Conclusions of Law at 16-19.

{¶ 27} Based upon the testimony presented, we do not find the trial court lost its way in making the decisions to terminate mother's parental rights and grant permanent custody of the children to SCDJF. We do not find any manifest miscarriage of justice.

{¶ 28} Assignments of Error I and II are denied.

{¶ 29} The judgments of the Court of Common Pleas of Stark County, Ohio, Family Court Division, are hereby affirmed.

By King, J.

Hoffman, P.J. and

Wise, J. concur.

AJK/db